Robert **RICHARDS, Jr.,** a minor by his father and next friend Robert Richards, Plaintiff, Appellee,

v.

Roger **THURSTON,** as Principal of Marlboro High School, Defendant, Appellant.

No. 7455.

United States Court of Appeals, First Circuit.

Heard March 2, 1970.

Decided April 28, 1970.

David G. Hanrahan, Boston, Mass., with whom William J. Brennan, City Solicitor, George A. McLaughlin, Jr., and The McLaughlin Brothers, Boston, Mass., were on brief, for appellant.

Henry P. Monaghan, Boston, Mass., with whom Daniel D. Levenson, Spencer Neth and John H. Henn, Boston, Mass., were on brief, for appellee.

Gerard F. Doherty, Boston, Mass., on brief for Massachusetts Secondary School Principals Association, amicus curiae.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

Plaintiff, a seventeen year old boy, was suspended from school at the begin-

ning of his senior year because he refused to cut his hair, which a local newspaper story introduced into evidence described as "falling loosely about the shoulders". Defendant, the principal of the high school in Marlboro, Massachusetts, admits that there was no written school regulation governing hair length or style but contends that students and parents were aware that "unusually long hair" was not permitted.

On these sparse facts the parties submitted the case posed by plaintiff's request for injunctive relief against the deprivation of his rights under 42 U.S.C. § 1983. Each relied on the failure of the other to sustain his burden of proof, plaintiff claiming that he should prevail in the absence of evidence that his appearance had caused any disciplinary problems, and defendant maintaining that plaintiff had failed to carry his burden of showing either that a fundamental right had been infringed or that defendant had not been motivated by a legitimate school concern. The district court granted plaintiff's request for a permanent injunction and ordered plaintiff reinstated. Richards v. Thurston, 304 F.Supp. 449 (D.Mass.1969).

■■ Defendant, apart from his argument on the merits, insists that the district court erred in not abstaining pending consideration by the courts of the Commonwealth of Massachusetts. We are in entire sympathy with the proposition that questions involving school board authority ought to be resolved whenever possible on a nonconstitutional basis.[1] In this case, however, we agree with the district court that Leonard v. School Committee of Attleboro, 349 Mass. 704, 212 N.E.2d 468 (1965), a case containing similar facts, forecloses that nonconstitutional approach and clearly suggests that the courts of Massachusetts would have ruled against plaintiff on these facts.[2]

■ Plaintiff, too, advances a narrow argument for prevailing—the lack of any specific regulation authorizing suspension for unusual hair styles. We do not accept the opportunity. We take as given defendant's allegation in his answer that parents and students—including plaintiff—were aware that unusually long hair was not permitted. Moreover, we would not wish to see school officials unable to take appropriate action in facing a problem of discipline or distraction simply because there was no preexisting rule on the books.

Coming to the merits, we are aware of a thicket of recent cases concerning a student's wearing of long hair in a public high school.[3] While several of the

---

1. For a thoughtful discussion, see Goldstein, The Scope and Sources of School Board Authority to Regulate Student Conduct and Status: A Nonconstitutional Analysis, 117 U.Pa.L.Rev. 373 (1969).

2. See Monroe v. Pape, 365 U.S. 167, 183, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); McNeese v. Board of Education, 373 U.S. 668, 671–674, 83 S.Ct. 1433, 10 L.Ed. 2d 622 (1963).

3. Decisions holding against the student include the following: Ferrell v. Dallas Independent School District, 392 F.2d 697 (5th Cir. 1968), cert. denied, 393 U.S. 856, 89 S.Ct. 98, 21 L.Ed.2d 125 (1968); Davis v. Firment, 269 F.Supp. 524 (E.D.La.1967), aff'd, 408 F.2d 1085 (5th Cir. 1969); Crews v. Clones, 303 F.Supp. 1370 (S.D.Ind.1969); Brick v. Board of Education, 305 F.Supp. 1316 (D.Colo.1969); Stevenson v. Wheeler County Board of Education, 306 F.Supp.

97 (S.D.Ga.1969) (mustaches); Akin v. Board of Education, 262 Cal.App.2d 161, 68 Cal.Rptr. 557 (1968); Neuhaus v. Torrey, 310 F.Supp. 192 (N.D.Cal., March 10, 1970); and Leonard v. School Committee of Attleboro, supra. Several decisions gave considerable weight to the evidence of prior disruptions of the school atmosphere caused by unusual hair styles. E. g., Ferrell, Davis, Brick. The Crews decision relied on the fact of prior disruptions concerning the particular plaintiff there involved.

Ranged against these authorities are the following cases holding for the student: Finot v. Pasadena City Board of Education, 250 Cal.App.2d 189, 58 Cal. Rptr. 520 (1967) (First Amendment); Meyers v. Arcata Union High School District, 269 Cal.App.2d 549, 75 Cal. Rptr. 68, 72–73 (1969) (First Amendment); Sims v. Colfax Community School District, 307 F.Supp. 485 (S.D.

decisions holding against the student have relied on the prior occurrence of disruptions caused by unusual hair styles,[4] we think it fair to say that many of those courts would hold against the student on a barren record such as ours, on the grounds that the student had not demonstrated the importance of the right he asserts. On the other hand, in few of the cases holding for the student was there any evidence of prior disruptions caused by hair styles. Despite the obvious disagreement over the proper analytical framework, each of the "pro-hair" courts held explicitly or implicitly that the school authorities failed to carry their burden of justifying the regulation against long hair.

What appears superficially as a dispute over which side has the burden of persuasion is, however, a very fundamental dispute over the extent to which the Constitution protects such uniquely personal aspects of one's life as the length of his hair, for the view one takes of the constitutional basis—if any —for the right asserted may foreshadow both the placement and weight of the evidentiary burden which he imposes on the parties before him. For this reason, we resist the understandable temptation, when one is not the final arbiter of so basic a constitutional issue, to proceed directly to an application of the consti-

tutional doctrine without attempting to ascertain its source as precisely as possible.

It is perhaps an easier task to say what theories we think do *not* apply here. We recognize that there may be an element of expression and speech involved in one's choice of hair length and style, if only the expression of disdain for conventionality. However, we reject the notion that plaintiff's hair length is of a sufficiently communicative character to warrant the full protection of the First Amendment. United States v. O'Brien, 391 U.S. 367, 376, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968); Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 507–508, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); *see* Cowgill v. California, 396 U.S. 371, 90 S.Ct. 613, 24 L.Ed.2d 590 (1970), Harlan, J. concurring; *cf.* Close v. Lederle, 424 F.2d 988 (1st Cir. 1970), filed this date. That protection extends to a broad panoply of methods of expression, but as the non-verbal message becomes less distinct, the justification for the substantial protections of the First Amendment becomes more remote. Nor do we see the logic of expanding the right of marital privacy identified in Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), into a right to go public as one pleases.[5]

Iowa 1970) (Due Process Clause protects female student's long hair); Breen v. Kahl, 296 F.Supp. 702 (W.D.Wis. 1969) (Due Process Clause), aff'd, 419 F.2d 1034 (7th Cir. 1969) ("penumbra" of First Amendment or Ninth Amendment); Calbillo v. San Jacinto Junior College, 305 F.Supp. 857 (S.D.Tex. 1969) (Equal Protection Clause in a junior college context); Zachry v. Brown, 299 F.Supp. 1360 (N.D.Ala.1967) (Equal Protection Clause); Griffin v. Tatum, 300 F.Supp. 60 (M.D.Ala.1969) (Equal Protection Clause and Due Process Clause); Westley v. Rossi, 305 F. Supp. 706 (D.Minn.1969) (same).

In Farrell v. Smith, 310 F.Supp. 732 (D.Me.1970), the court explicitly accepted the proposition that the right to wear one's hair at any length is an aspect of personal liberty protected by the Due Process Clause of the Fourteenth

Amendment, following the "pro-hair" cases cited above. However, the court on the facts before it held that the state vocational school had met its substantial burden of justification by a showing that neatness of appearance enhanced the employment opportunities of its students.

4. *See also* two Fifth Circuit "freedom button" cases expressly differentiated because of the disruptive response to the plaintiffs in the latter case which had not occurred in the former: Burnside v. Byars, 363 F.2d 744 (5th Cir. 1966), and Blackwell v. Issaquena County Board of Education, 363 F.2d 749 (5th Cir. 1966).

5. That "privacy" has not been generally understood in the latter sense is indicated by the definition of privacy given by Alan F. Westin in his wide-ranging book Privacy and Freedom, (1967), at

■ Our rejection of those constitutional protections in this case is not intended to denigrate the understandable desire of people to be let alone in the governance of those activities which may be deemed uniquely personal. As we discuss below, we believe that the Due Process Clause of the Fourteenth Amendment establishes a sphere of personal liberty for every individual, subject to reasonable intrusions by the state in furtherance of legitimate state interests.[6]

The idea that there are substantive rights protected by the "liberty" assurance of the Due Process Clause is almost too well established to require discussion. Many of the cases have involved rights expressly guaranteed by one or more of the first eight Amendments.[7] But it is clear that the enumeration of certain rights in the Bill of Rights has not been construed by the Court to preclude the existence of other substantive rights implicit in the "liberty" assurance of the Due Process Clause. In the 1920's the Court held that such "liberty" includes the right of parents to send their children to private schools as well as public schools and to have their children taught the German language. Pierce v. Society of Sisters, 268 U.S. 510, 534–535, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); Meyer v. Nebraska, 262 U.S. 390, 399–400, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). In 1958, the Court held that "the right to travel [to a foreign country] is a party of the 'liberty' of which the citizen cannot be deprived without the due process of law under the Fifth Amendment." Kent v. Dulles, 357 U.S. 116, 125, 78 S.Ct. 1113, 1118, 2 L.Ed.2d 1204 (1958); followed in Aptheker v. Secretary of State, 378 U.S. 500, 505–506, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964). More recently, the Court, without specifically ascribing its source, established the right to travel interstate as a right fundamental to our Federal Union despite the absence of any specific mention thereof in the Constitution. United States v. Guest, 383 U.S. 745, 757, 759, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966); Shapiro v. Thompson, 394 U.S. 618, 629–631, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). Such a right of interstate travel being more inherent in and essential to a Federal Union than the right to travel abroad established in *Kent* and *Aptheker*,[8] we can only conclude that such right must a fortiori be an aspect of the "liberty" assured by the Due Process Clause.

We do not say that the governance of the length and style of one's hair is necessarily so fundamental as those substantive rights already found implicit in the "liberty" assurance of the Due Process Clause, requiring a "compelling" showing by the state before it may be impaired. Yet "liberty" seems to us an incomplete protection if it encompasses only the right to do momentous acts, leaving the state free to interfere with

---

p. 7: "Privacy is the claim of individuals, groups or institutions to determine for themselves when, how, and to what extent information about them is communicated to others."

6. The fact that the "liberty" protected by the Due Process Clause includes such a sphere of personal liberty does *not* require the state to provide a special forum for the exercise of such personal liberty. Moreover, having provided a forum, the state may revoke it when the exercise of personal liberty becomes inimical to the societal interests affected by such use of the state's forum. *Cf.*, Close v. Lederle, *supra*. Of course, when the activity takes on the coloration of a First Amendment right, only a more compelling interest will justify a limitation on such activity. United States v. O'Brien, *supra*, 391 U.S. at 376–377, 88 S.Ct. 1673.

7. *See e. g.*, Schneider v. New Jersey. 308 U.S. 147, 160, 60 S.Ct. 146, 84 L.Ed. 155 (1939); Cantwell v. Connecticut, 310 U.S. 296, 303–305, 60 S.Ct. 900, 84 L. Ed. 1213 (1940); NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 460, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); Brotherhood of Railroad Trainmen v. Virginia ex rel. Virginia Bar, 377 U.S. 1, 84 S.Ct. 1113, 12 L.Ed.2d 89 (1964).

8. *See* discussion in *Guest*, *supra*, and *Shapiro*, *supra*, and *see* Stewart, J. concurring in *Shapiro*, 394 U.S. at 642–643, 89 S.Ct. 1322.

those personal aspects of our lives which have no direct bearing on the ability of others to enjoy their liberty. As the court stated in Union Pacific Railway Co. v. Botsford, 141 U.S. 250, 251, 11 S. Ct. 1000, 1001, 35 L.Ed. 734 (1891):

> "No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law. As well said by Judge Cooley, 'The right to one's person may be said to be a right of complete immunity: to be let alone.'" [9]

Indeed, a narrower view of liberty in a free society might, among other things, allow a state to require a conventional coiffure of all its citizens, a governmental power not unknown in European history.[10]

■ We think the Founding Fathers understood themselves to have limited the government's power to intrude into this sphere of personal liberty, by reserving some powers to the people.[11] The debate concerning the First Amendment is illuminating. The specification of the right of assembly was deemed mere surplusage by some, on the grounds that the government had no more power to restrict assembly than it did to tell a man to wear a hat or when to get up in the morning. The response by Page of Virginia pointed out that even those "trivial" rights had been known to have been impaired—to the Colonists' consternation—but that the right of assembly ought to be specified since it was so basic to other rights.[12] The Founding Fathers wrote an amendment for speech and assembly; even they did not deem it necessary to write an amendment for personal appearance.[13] We conclude that within the commodious concept of liberty, embracing freedoms great and small, is the right to wear one's hair as he wishes.

Determining that a personal liberty is involved answers only the first of two questions. The second is whether there is an outweighing state interest justifying the intrusion. The answer to this question must take into account the nature of the liberty asserted, the context in which it is asserted, and the extent to which the intrusion is confined to the legitimate public interest to be served. For example, the right to appear au naturel at home is relinquished when one sets foot on a public sidewalk. Equally obvious, the very nature of public school education requires limitations on one's personal liberty in order for the learning process to proceed. Finally, a school rule which forbids skirts shorter than a certain length while on school grounds would require less justification than one requiring hair to be cut, which affects the student twenty-four hours a day, seven days a week, nine months a year. See Westley v. Rossi, 305 F.Supp. at 713–714.

9. In more recent cases, the Court has weighed this right to the control over one's own person against the state interest underlying the state's intrusion. Rochin v. California, 342 U.S. 165, 172, 72 S.Ct. 205, 96 L.Ed. 183 (1952); Breithaupt v. Abram, 352 U.S. 432, 439, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957); cf. Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

10. See W. and A. Durant, The Story of Civilization: Part VIII, The Age of Louis XIV, 396–410 (1963) (account of Peter the Great's proscription of beards).

11. Redlich, "Are There 'Certain Rights . . . Retained By The People' ?", 37 N.Y.U.L.Rev. 787, 804–812 (1963).

12. This exchange is reported and discussed in Irving Brant's The Bill of Rights, 53–67 (1965). As the author there points out, the reference to the wearing of hats had considerable meaning to the participants of the debates, recalling William Penn's trial for disturbing the peace. Upon entering the courtroom bareheaded, Penn was directed by a court officer to don his hat, after which he was fined by the court for not doffing his hat.

13. Remarks of James Madison, reported and discussed in Redlich article cited in n. 10 supra.

■ Once the personal liberty is shown, the countervailing interest must either be self-evident or be affirmatively shown. We see no inherent reason why decency, decorum, or good conduct requires a boy to wear his hair short. Certainly eccentric hair styling is no longer a reliable signal of perverse behavior. We do not believe that mere unattractiveness in the eyes of some parents, teachers, or students, short of uncleanliness, can justify the proscription. Nor, finally, does such compelled conformity to conventional standards of appearance seem a justifiable part of the educational process.

In the absence of an inherent, self-evident justification on the face of the rule, we conclude that the burden was on the defendant. Since he offered no justification, the judgment of the district court must be affirmed.

Affirmed.