**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**TEKNOR–APEX COMPANY, Respondent.**

No. 72–1115.

United States Court of Appeals, First Circuit.

Argued Sept. 7, 1972.

Decided Oct. 13, 1972.

participating in union activities in violation of § 8(a)(3) and (1) of the National Labor Relations Act, and (2) that the company interfered with, restrained, and coerced its employees by creating an atmosphere of anti-union surveillance in violation of § 8(a)(1) of the Act. The only question before us is whether on the record as a whole these findings are supported by substantial evidence.

The company is engaged in the manufacture and sale of rubber and plastic products in Pawtucket, Rhode Island. It has some 350 employees. In January 1971 the union [1] initiated a campaign to organize the employees. Howard, who had been hired in November 1968, became aware of the union's efforts in late January. From that time until the date of his discharge his participation in the union campaign was as follows: on February 9 he attended his first union meeting, signed an authorization card, and was appointed to an "in factory" organizing committee; on February 17 he took a fellow employee to a second meeting; on February 24 he brought another employee to a third meeting; and throughout this period he openly supported the union in discussions with other employees in the plant. On February 26 Howard was laid off, allegedly for lack of work. Six days later he was told that he would not be rehired because of his absenteeism. Subsequently the company endeavored to justify Howard's discharge for a number of other reasons.[2]

William L. Corbett, Washington, D. C., Atty., with whom Peter G. Nash, Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Allison W. Brown, Jr., Washington, D. C., Atty., were on brief, for petitioner.

Vernon C. Stoneman, Boston, Mass., with whom Seth M. Kalberg, Jr., and Stoneman & Chandler, Boston, Mass., were on brief, for respondent.

Before COFFIN, Chief Judge, McENTEE, Circuit Judge, and HAMLEY,* Senior Circuit Judge.

PER CURIAM.

■■ This petition for enforcement of a Labor Board order is based on findings (1) that the respondent company discharged employee Alan J. Howard for

■ From our review of the record we find that there is substantial evidence to justify the Board's conclusion that Howard was discharged for participating in union activities. Employee Raymond testified that supervisor Regan told him on the day following How-

---

\* Of the Ninth Circuit, sitting by designation.

1. District #2, United Rubber, Cork, Linoleum & Plastic Workers of America, AFL–CIO.

2. Personnel manager Gaines characterized his decision not to rehire Howard as follows:

"He's immature, he's undependable, his attendance is way below our normal standards. He is unadaptable. He is only willing to work on the simplest job. He is completely without ambition to progress further. He's rejected every opportunity to advance him to a better paying job, and therefore is not desirable. . . . "

ard's termination that the company knew all about Howard and all of the employees, that at a supervisors' meeting the union and nonunion employees had been identified, and that this was the reason that Howard was laid off.[3] This testimony demonstrates that the company knew at the time of the discharge that Howard was a union adherent and is also direct evidence that the discharge was motivated by an anti-union animus.[4] In addition, the company's initial justification for the layoff, lack of work, is highly suspect since Howard was the only employee out of a work force of 350 who was laid off. This is particularly true in view of the fact that, as the Board found, it was the company's policy to transfer employees within the plant rather than to lay them off when production declined in their departments. Moreover, that excuse was abandoned within a week. There is also substantial evidence for finding the Company's two other major reasons—Howard's absenteeism and the unusual arm-flapping incident several days before the discharge—to be mere pretexts. Although Howard's absenteeism had been sufficiently flagrant in the prior year to warrant a warning in December, his record had improved in the subsequent months, he had not been absent for two weeks prior to discharge, and the personnel manager thought the major change in the two months between warning and discharge was not any worsening of his attendance record but "the falling off of his production." As to the arm-flapping incident, the production manager admitted that the allegation

that he was a pill-popper, stated by the foreman as an explanation for the incident, was known to him long before and did not prompt his decision to discharge Howard.

Finally, an unfavorable inference may be drawn against the company for its inability to settle upon an explanation for the discharge. This failure "in itself lends support to the theory that [Howard's] union support was the real explanation." A. J. Krajewski Mfg. Co. v. NLRB, 413 F.2d 673, 676 (1st Cir. 1969). For these reasons, we cannot say that the evidence on the record as a whole does not support the Board's finding.

We also find that the Board's conclusion that the company interfered with its employees in violation of § 8(a)(1) is supported by substantial evidence. In addition to Howard's discharge and the Regan-Raymond conversation, the record demonstrates that on one occasion a supervisor told an employee who was working as a lead man at the time to watch for union activity and if he saw any soliciting of any kind to bring it to his attention. A second incident took place when a foreman named Leech and several employees had a conversation in a local tavern during the union campaign. The foreman told the employees that they were foolish "to get involved in the thing," that the employees who supported the last organizational campaign were no longer there, that "the company knew all the guys that were involved in the union," and that if the union "didn't get in" they would "be gone." The foreman then pointed to one em-

---

3. Regan denied ever attending any supervisors' meetings and ever making any of the statements attributed to him by Raymond. Although the finding of knowledge can rest only on this statement, we believe that two pieces of evidence, independent of and in addition to the demeanor of the witnesses, support the Board's crediting of Raymond's and discrediting of Regan's testimony. First, Personnel Manager Gaines testified that there were supervisors' meetings during the relevant period, thus casting doubt on Regan's denial of attendance. More sig-

nificantly, Leech, another supervisor, testified that Raymond was generally reliable and truthful. The Board's reliance on Raymond's testimony is therefore far from capricious.

4. Although the Trial Examiner did not rely on Raymond's testimony regarding the motivation for the discharge, the Board here does rely on it. Since it is our obligation to consider whether there is substantial evidence on the record *as a whole*, we deem it proper to consider that evidence.

ployee and said that he and another who was standing nearby would be out. He also asked two other employees whether they had signed union cards and when they replied in the affirmative, he said that if they did not watch themselves, they too would be "on the outs." [5]

From the aforegoing we conclude that there is substantial evidence that the company violated § 8(a)(1) of the Act by creating an impression of surveillance and by interrogating its employees with regard to their union activities.

The Board's order may be enforced.

---

5. Foreman Leech testified that he did not have any recollection of this incident, but also admitted that his memory of that day was "pretty well blotted out" because of the amount of alcohol he had consumed. The record shows that three employees testified that this incident occurred.