Claudette TARDIF, Plaintiff, Appellant,

v.

Thomas QUINN et al., Defendants, Appellees.

No. 76–1389.

United States Court of Appeals, First Circuit.

Dec. 16, 1976.

Jeffrey M. Freedman, Boston, Mass., with whom Brown, Rudnick, Freed & Gesmer, Boston, Mass., was on brief, for plaintiff, appellant.

Matthew R. McCann, Worcester, Mass., with whom Maher, McCann & Talcott, Worcester, Mass., was on brief, for defendants, appellees.

Before COFFIN, Chief Judge, ALDRICH, Senior Circuit Judge, and GIGNOUX, District Judge.*

ALDRICH, Senior Circuit Judge.

In the spring of her third year as a non-tenured French teacher at Southbridge High School plaintiff-appellant Claudette Tardif was notified that her contract would not be renewed. She was 25 years old. For over a year she and Rose Proulx, her department head, who had been a teacher for 35 years, had disputed the length of plaintiff's skirts, and its alleged effect upon her students. The termination letter gave four reasons, all facially sound, and none relating directly to plaintiff's dress. In this Civil Rights action under 42 U.S.C. §§ 1983 and 1985 against Proulx and a number of school officials, plaintiff alleges that her constitutional rights were violated because the real reason for her termination was the length of her dress.

In the fall of 1969, the beginning of her second year, plaintiff, according to her testimony, shortened her dresses. This was met with vigorous objection on the part of Mrs. Proulx. The court found that "from this time on [plaintiff's] relations with her supervisor were strained, and marked with frequent hostile exchanges. . . . In January 1971, . . . Mrs. Proulx stated that, unless plaintiff changed her mode of dress, she would no longer be in the school system." Plaintiff made no change. Near the end of March she was asked to resign, and on her refusal, the ax fell. At that time she was unable to obtain a statement of reasons. Thereafter, possibly because of

our decision in *Drown v. Portsmouth School Dist.,* 1 Cir., 1970, 435 F.2d 1182, she received a letter giving four reasons: lack of interest in professional growth, insufficient participation in school activities, unwillingness to work with students after school, and poor "image."

After three days of trial, and considerable post trial activities, the court found that plaintiff had been a superior teacher, that the charges in the letter relating to her abilities and asserted non-activities were contradicted by the "overwhelming weight of the evidence,"[1] and that her "image was that of an energetic, imaginative and dedicated teacher." As to "professional growth," however, the court agreed that plaintiff had failed to meet her contractual requirements with respect to taking outside courses for credit. On that basis it dismissed the action, without reaching the question whether termination on account of dress would violate her constitutional rights.

The parties, consistent with the practice they set in the district court, have filed elaborate briefs. Defendants, although accusing plaintiff of seeking to relitigate the facts, spend much of their time doing precisely that themselves, to the extent of even misstating a crucial finding, and fail even to argue the constitutional issue, stating that the whole question of dress was a "non-issue." We cannot find ourselves so restricted.

The court's conclusion that plaintiff failed to meet the outside courses requirement raises questions of contract interpretation. More important, in the light of its late appearance,[2] coupled with defendants' total failure to support other reasons given, causes us to believe, following familiar principles in Labor Board cases, that it should be disregarded as "pretextual." *See NLRB*

---

* Of the District of Maine, sitting by designation.

1. In their brief, defendants argue the significance of their evidence at length. After reviewing the record as a whole, including the contradictions and inconsistencies of defendants' two principal witnesses, we do not see how the court could have reached any other conclusion.

2. *E.g.,* defendant school principal admitted that he had decided on plaintiff's termination in December 1970. At that time it could not be known that she would not meet what he subsequently said were her credit requirements. Nor did he tell her his interpretation of what they were.

*v. Teknor-Apex Co.,* 1 Cir., 1972, 468 F.2d 692; *NLRB v. Joseph Antell, Inc.,* 1 Cir., 1966, 358 F.2d 880, 883. We must, therefore, reach the questions presented on the assumption that plaintiff was terminated only because of her "image," in particular that it was over-exposed.

The school principal testified that he "never . . . consider[ed] her method of dress in reviewing her image on students." This was not only inconsistent with his other testimony, but was contradicted by what the court found the school superintendent told plaintiff, and by Mrs. Proulx herself, who testified that image meant to her, dress. The court, having taken a view, found that plaintiff's dresses, which came "half-way down [her] thigh," were "comparable in style to dresses worn by young, respectable professional women during the years when the plaintiff was teaching." It further found that her dresses in fact "had no startling or adverse effect on her students or on her effectiveness as a teacher."

We will assume that by this finding the court meant that plaintiff's dress length was within reasonable limits, and we further assume that this finding was warranted. On the other hand, the court's independent judgment as to the impact and propriety of plaintiff's dress does not amount to a finding that defendants' objections to the length were irrational in the context of school administration concerns. On this basis we consider plaintiff's claim that freedom of choice in matters of personal appearance is an aspect of the Fourteenth Amendment's "commodious concept of liberty, embracing freedoms great and small." *See Richards v. Thurston,* 1 Cir., 1970, 424 F.2d 1281, 1285.[3]

 In *Thurston* we held that, in the absence of any showing of an affirmative justification, prohibiting schoolboys from wearing long hair was constitutionally offensive. At the same time, we remarked in our general discussion that "a school rule which forbids skirts shorter than a certain length while on school grounds would re-

quire less justification than one requiring hair to be cut, which affects the student twenty-four hours a day . . .." 424 F.2d at 1285. But apart from the less restrictive nature of the school's requirement here, what is more important is that we are not dealing with personal appearance in what might be termed an individual sense, but in a bilateral sense—a contractual relationship. Whatever constitutional aspect there may be to one's choice of apparel generally, it is hardly a matter which falls totally beyond the scope of the demands which an employer, public or private, can legitimately make upon its employees. *Cf. Kelley, Comm'r v. Johnson,* 1976, 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708; *Earwood v. Continental Southeastern Lines, Inc.,* 4 Cir., 1976, 539 F.2d 1349. We are unwilling to think that every dispute on such issues raises questions of constitutional proportions which must stand or fall, depending upon a court's view of who was right. As Judge, now Mr. Justice, Stevens said in a similar case, *Miller v. School Dist. No. 167,* 7 Cir., 1974, 495 F.2d 658, 667,

> "If a school board should correctly conclude that a teacher's style of dress or plummage, has an adverse impact on the educational process, and if that conclusion conflicts with the teacher's interest in selecting his own life style, we have no doubt that the interest of the teacher is subordinate to the public interest. We must assume, however, that sometimes such a school board determination will be incorrect. Even on that assumption, we are persuaded that the importance of allowing school boards sufficient latitude to discharge their responsibilities effectively—and inevitably, therefore, to make mistakes from time to time—outweighs the individual interest at stake."

 In employee-employer relationships the constitutional area is, and should be, small. However successful school teachers have, properly, been in First Amendment cases, the federal courts are not in the business of reviewing day-to-day adminis-

---

3. There is no claim that the length of plaintiff's skirts was intended as a form of symbolic ex-

pression, and thus protected by the First Amendment. *Richards v. Thurston, ante.*

trative judgments. *Cf. Bishop v. Wood,* (1976), 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684. We need not, however, go as far as the *Miller* court did in foreclosing relief even in extreme circumstances. 495 F.2d at 668. Once even a small, as distinguished from a fundamental, constitutional right is shown to be involved, an employee might succeed by showing the invasion so irrational as to demonstrate lack of good faith. The case was not presented on that basis; neither could we say that the evidence would have warranted such a finding. Whether the conclusion that plaintiff's dress had a disruptive effect was correct or not, we could not say it was not "motivated by a legitimate school concern." *Richards v. Thurston,* ante, 424 F.2d at 1282.

*Affirmed. Because of appellees' brief, no costs.*