[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO PLMNTIFFS' FIRST AMENDED COMPLAINT
The defendants have moved for summary judgment on the plaintiffs' claims that the establishment and enforcement of a policy of requiring public school students to comply with a dress code narrowing their choices of apparel in school is an unconstitutional infringement of the rights of the students and their parents. The minor plaintiffs do not claim infringement of their right to freedom of expression; rather, they claim a violation of their right to privacy and liberty. The adult plaintiffs claim an infringement of their right of parental autonomy, that is, their right to decide maters concerning the conduct of their children.
History of the Case
In April 1999, plaintiffs Teshana Byars, Levaughn Johnson, Bryan Layton, and Aimee Scarduzio, students in three middle schools within the public school system of the City of Waterbury, filed suit through their parents and next friends alleging that the City's school attire policy and the enforcement of that policy by suspensions and expulsions from school and other punishments, violate rights of privacy and personal liberty guaranteed by the First, Fourth and Fourteenth Amendments to the Constitution of the United States and Article First, §§ 7, 8, 9 and 10
of the Connecticut Constitution. The minor plaintiffs also allege violation of their right to a public education, in contravention of Article Eighth, § 10 of the Connecticut Constitution. The plaintiffs do not claim any violation of their right to freedom of expression. CT Page 8917
The plaintiff parents, Dennis Byars and Arline Stephenson, Theresa Williams, Cynthia Slaney, Joseph Scarduzio and Sherry Scarduzio, allege deprivation of their right to exercise parental authority over their children, in violation of the First and Fourteenth Amendments.
The plaintiffs bring their federal claims pursuant to 42 U.S.C. § 1983. They named as defendants the City of Waterbury, the board of education of the City of Waterbury, and thensuperintendent of schools Roger Damerow.
At the time the plaintiffs commenced their action, the school attire policy included a provision that allowed students whose parents filed a form by a stated deadline to opt out of some of the provisions of the student attire policy, notably, those precluding the wearing of blue jeans. The plaintiffs sought preliminary injunctive relief against the enforcement of the policy. Their application was denied after a hearing by the court, Caruso, J., in a ruling dated June 3, 1999.
On May 22, 2000, the plaintiffs filed a request for leave to amend their complaint to reflect new circumstances. First, the plaintiffs allege that on August 4, 1999, the board of education amended the school attire policy to eliminate the opt-out provision, thereby making it mandatory for all the plaintiffs to comply with all of the limitations on apparel stated in the policy or face punishments including suspension and expulsion from school. The plaintiffs have substituted the present superintendent of schools, Matthew Borrelli, as a defendant in lieu of his predecessor, Roger Damerow.
The court has granted the plaintiffs' request for leave to amend their complaint. Though the defendants' motion for summary judgment was filed before the amendment, the parties stipulated in open court on June 29, 2000, that the fully-briefed motion for summary judgment was to be taken as addressed to the amended complaint, and oral argument proceeded on that date.
The provisions of the mandatory school attire policy which the plaintiffs claim infringe their constitutional rights are the limitations on what they may wear to school, the imposition of sanctions including suspension and expulsion from school for violations, and the absence of any option of not complying for reasons other than religious convictions or health needs.
The school attire policy, the full text of which is set forth in a footnote, limits students to conventionally-styled clothing with a narrow choice of colors.[1] The policy does not require the purchase of an CT Page 8918 actual school uniform, but restricts students' choice of clothing to the specified styles, colors, and fabrics. The policy prohibits the wearing of blue jeans.
The policy has been carefully drafted to avoid regulation of attire required by religious practice, § 5.5, and it makes provisions for furnishing attire to those who may not be able to afford to buy apparel that would comply with the policy, § 5.6.
Plaintiff Teshana Byars alleges that she was expelled from school for the 1999-2000 school year for repeatedly wearing blue jeans to school and for trespassing on the school grounds while she was under suspension for such violations. She alleges that she was assigned to the Enlightenment School at the Academy, an alternative program offered to students "who are over-age for grade level, have difficulty with large class environments, are truant, or disruptive in traditional leaming environments." Teshana Byars and her parents allege that this assignment, which she refused in favor of home schooling, constituted a failure to provide her with an "appropriate educational opportunity." The amended complaint does not state what this plaintiffs placement is for the 2000-2001 school year; however, Byars alleges that if she returns to the regular school program she will be subject to additional suspensions, expulsion or other forms of discipline if she wears blue jeans or other prohibited clothing to school.
Plaintiff Levaughn Johnson likewise alleges that he was expelled from West Side Middle School for multiple violations of the school attire policy. He alleges that he attended the Enlightenment School during the 1999-2000 school year and that he wishes to attend the regular school program, but that if he does so he will be subject to suspension, expulsion and other discipline if he wears clothing not permitted under the school attire policy.
Plaintiff Aimee Scarduzio alleges that she was suspended from school on multiple occasions between March 29, 1999 and May 10, 1999, for violations of the school attire policy, and that she faces further disciplinary actions if she fails to comply with the policy.
Plaintiff Brian Layton does not allege that he has ever been suspended from school for violating the school attire policy; however, he alleges that he is subject to suspension and other disciplinary action if he fails to comply with the policy.
None of the plaintiffs makes any claim that his or her desire not to comply with the school attire policy proceeds from the requirement of his or her religion or from any health need, and none asserts that any CT Page 8919 article of clothing he or she seeks to wear contains any statement of a political message. None of the plaintiffs makes any claim that he or she is unable to afford clothing that would comply. with the school attire policy. The school attire policy makes provision for all of those circumstances, none of which are presented by the plaintiffs.
All of the adult plaintiffs allege that the enforcement of the school attire policy interferes with their rights of parental autonomy.
In supplemental briefs, the parties have disputed whether they had stipulated at the hearing on the application for a preliminary injunction that the adjudication of this case is governed by a particular legal standard. The court concludes that no agreement was reached and that it is for the court to determine this legal issue.
Standard of Review
Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Practice Book § 17-49 (formerly § 384). Sherwood v. Danbury Hospital, 252 Conn. 193, 201 (2000); Rivera v.Double A Transportation, Inc., 248 Conn. 21, 24 (1999); Nichols v.Lighthouse Restaurant, Inc., 246 Conn. 156, 163, 716 A.2d 71 (1998);Peerless Ins. Co. v Gonzalez, 241 Conn. 476, 481, 697 A.2d 71 (1997).
The party moving for summary judgment bears the burden of proving the absence of a dispute as to any material fact which, under applicable principles of substantive law, entitle him to a judgment as matter of law; and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Rivera v. Double A Transportation. Inc., supra, 248 Conn. 24. "To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." Witt v. St. Vincent's MedicalCenter, 252 Conn. 363, 373 n. 7 (2000); Alvarez v. New Haven Register.Inc., 249 Conn. 709, 714 (1999).
In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. The test is whether a party would be entitled to a directed verdict on the same facts. Sherwood v. Danbury Hospital, supra, 252 Conn. 201; Serrano v.Burns, 248 Conn. 419, 424 (1999); Connell v. Colwell, 214 Conn. 242,246-47 (1990). In Connecticut, a directed verdict may be rendered only if, on the evidence viewed in the light most favorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than CT Page 8920 that embodied in the verdict as directed. United Oil Co. v. UrbanRedevelopment Commission, 158 Conn. 364, 380 (1969); Vuono v. Eldred,155 Conn. 704, 705 (1967); Paul v. Gordon, 58 Conn. App. 724,727 (2000). The party moving for summary judgment therefore has the burden of establishing what the facts are.
In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist. Nolan v. Borkowski, 206 Conn. 495, 500 (1998); Telescov. Telesco, 187 Conn. 715, 718 (1982).
Law of the Case
The defendants assert that the legal analysis of Judge Caruso in denying the plaintiffs' application for a temporary injunction is the law of the case, and that the same analysis must be applied in adjudicating the present motion. As has been explained above, the school attire policy at issue at the time of the hearing on that application was not mandatory but included an option by which students could be designated by their parents as being exempt from the provisions that attire be limited to certain colors, styles and fabrics. The ability to avoid the application of a policy certainly affects the degree to which that policy can be seen as limiting a person s liberty. The complaint now before the court concerns a policy that makes compliance with all limitations mandatory, with no opt-out provision. This court's obligation is to decide the issues presented by the amended complaint, which raises a different issue from the complaint upon which Judge Caruso ruled.
Even if an adjudication regarding an optional policy were somehow viewed as the same as the consideration of a mandatory policy, the law of the case doctrine does not apply in the manner the defendants advocate. In Breen v. Phelps, 186 Conn. 86, 99 (1982), the Connecticut Supreme Court announced standards for consideration by another judge of"a question of law which has been already presented on the record and determined adversely to the pleader.. The question of law before Judge Caruso was the probability of success on the merits of claims of unconstitutionality of a policy that was not mandatory. The question of law before this court is the legal sufficiency of claims of unconstitutionality of a policy that is mandatory in all respects. Since the issue is a different one, the doctrine of law of the case is inapplicable, even with the recognition that in Breen v. Phelps the Supreme Court did not require adherence to a priorjudge's analysis but recognized that each judge has an obligation to analyze the issue and "may treat [the prior decision] as the law of the case, fit is of the opinion that the issue was correctly decided." (Emphasis supplied) Breenv. Phelps, supra, 186 Conn. 99. CT Page 8921
As the Supreme Court explained in CFM of Connecticut, Inc. v.Chowdhury, 239 Conn. 375, 403 (1996), overruled, on other grounds, Statev. Salmon, 250 Conn. 147, 154 (1999), "[w]hereas a decision of one trial judge that is resjudicata is binding on the second judge who confronts it, a decision of one trial judge that declares the law of the case is not a limitation on the power of the second judge in the case to decide otherwise, under appropriate circumstances." The Court noted that interlocutory decisions in the same case are not resjudicata. Id.
The alteration of the defendants' policy on school attire, and the consequential alteration of the legal issue presented, require this court to conduct its own legal analysis and preclude the mechanical application of prior analysis as the law of the case.
If, as the defendants advocate, factual findings entered in a preliminary phase of the case became the law of the case, from which a subsequent court could not depart, then virtually no litigant who failed to prevail in a hearing on a discrete request for relief, such as a prejudgment attachment or temporary injunction, could ever expect to prevail at trial. Such is not the state of the law. Res judicata effect applies only to orders that meet the standards of finality for appeal, not interlocutory rulings. CFM of Connecticut. Inc. v. Chowdhury, supra,239 Conn. 398-99. In Stamford v. Kovac, 228 Conn. 95, 99 (1993), the Supreme Court ruled that adjudications of applications for temporary injunctions are interlocutory and not appealable.
The standards of proof with regard to temporary relief differ from those applicable to trials on the merits. The opportunity to prepare and to present complete evidence is limited by the shorter time allocated to such early proceedings. Unless parties have formally agreed to consolidation of the hearing regarding temporary injunctive relief with the trial on the merits of the claim for permanent relief, the factual findings from the first proceeding do not become binding. See DoublewalCorp. v. Toffolon, 195 Conn. 384, 392-93 (1985). A party may, after losing a bid for temporary relief, assemble a much weightier volume of evidence for subsequent stages of the proceedings.
Accordingly, the defendants have the burden of meeting the standard for entitlement to summary judgment, that is, that there is no general dispute as to material facts, and that they are entitled to judgment as a matter of law on the basis of the facts they present in support of their motion.
Grounds of the Plaintiffs' Opposition to the Motion
CT Page 8922
In their brief in opposition to the defendants' motion for summary judgment, the plaintiffs have raised three grounds for opposition: 1) that there are factual disputes concerning the justification for the school attire policy, 2) that the defendants have not presented empirical data that supports their opinion that the policy improves the educational environment, and 3) that the recent ruling of the United States Supreme Court in Troxel v. Granville, 530 U.S. ___ 120 S.Ct. 2054, ___ L.Ed.2d ____, (2000), requires rejection of a policy by which school officials, rather than parents, decide what children should wear to school.
In order to determine whether there are genuine issues of material fact in dispute, it is necessary to identify the legal standard that applies to the issue raised. The legal standard provides the basis for determining which facts are material.
Regulation of Student Conduct
The United States Supreme Court has confirmed repeatedly that students who attend public schools do not shed their constitutional rights at the schoolhouse door. Tinker v. Des Moines Independent Community SchoolDistrict, 393 U.S. 503, 506; 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L. Ed 2d 725 (1975); New Jerseyv. T.L.O. 469 U.S. 325, 336-37, 105 S.Ct. 733, 740, 83 L. Ed 2d 720
(1985). The exercise of rights of personal autonomy by students in public schools are with regard to searches and seizures, however, subject to reasonable regulation in order to promote safety and prevent disruption in the mission of the school, which is the safety and education of all students. New Jersey v. T.L.O., supra, 469 U.S. 339-40.
The United States Supreme Court has not specifically set forth the analytical approach to be used with regard to judicial review of a school district regulation of student conduct that is not claimed to infringe on exercise of the right of freedom of expression, but rather to curtail what the minor plaintiffs have characterized as a right of personal liberty or privacy.
Most of the public school dress code cases decided by the federal courts of appeals have concerned not regulation of attire but regulation of length and styles of hair. Probably because requirements concerning hair length necessarily limit a student's exercise of personal autonomy outside of school hours as well, the Courts of Appeals for the Seventh and Eighth Circuits have regarded regulation of hair length of public school students as an infringement of rights protected by the Ninth Amendment and the due process clause of the Fourteenth Amendment. These federal courts have required school districts to make a showing that the regulation serves a substantial government interest and that the CT Page 8923 regulation is no broader than is necessary to serve that interest.Holsapple v. Woods, 500 F.2d 49, 51-52 (7th Cir. 1974); Crews v. Cloncs, 432 F.2d 1259 (7th Cir. 1970); Breen v. Kahl, 419 F.2d 1034 (7th Cir. 1969), cert. denied, 398 U.S. 937, 90 S.Ct. 1836, 26 L.Ed.2d 268
(1970); Bishop v. Colaw, 450 F.2d 1069, 1075 (81h Cir. 1971).
The Fourth, Fifth and Sixth Circuits have required proof by the school district that the prohibited hair styles had an effect upon the health, discipline or decorum of the schools. Massie v. Henry, 455 F.2d 779, 783
(41h Cir. 1972); Gfell v. Rickelman, 441 F.2d 444 (6th Cir. 1971);Jackson v. Dorrier, 424 F.2d 213 (6th Cir.), cert. denied, 400 U.S. 850,91 S.Ct. 55, 27 L.Ed.2d 88 (1970); Ferrell v. Dallas Independent SchoolDistrict, 392 F.2d 697 (5th Cir.), cert. denied, 393 U.S. 856,89 S.Ct. 98,21 L.Ed.2d 125 (1968). In Stevenson v. Board of Education of WheelerCounty Georgia, 426 F.2d 1154, 1158 (5th Cir.), cert. denied,400 U.S. 957, 91 S.Ct. 355, 27 L. Ed 2d 265 (1970), the Fifth Circuit stated that "[t]he touchstone for sustaining such regulations is the demonstration that they are necessary to alleviate interference with the educational process."
The First Circuit has ruled that the right of students to determine their personal appearance with regard to the length of their hair is "implicit in the 'liberty' assurances of the Due Process Clause."Richards v. Thurston, 424 F.2d 1281, 1284 (1st Cir. 1970). Though it did not regard this right as "fundamental," the First Circuit noted that even liberty rights that may be considered minor or trivial must be protected to avoid undue interference by the government in the daily lives of the people. The court found adequate protection if the regulation was rationally related to the achievement of a valid government objective, but found that the regulation was not "self-evident" as, for example, a regulation barring students from bringing weapons to school would be self-evident in its justification. The First Circuit observed, "[n]or finally, does such compelled conformity to conventional standards of appearance seem ajustifiable part of the education process" and found that the school board had failed to prove that the regulation was justified by the factual evidence, rather than by the tastes or opinions of school administrators concerning long hair. Richards v. Thurston, supra,424 F.2d 1286.
The Court of Appeals for the Second Circuit appears not to have ruled on the issue of regulations of the length of students' hair or otherpublic school dress code issues. With regard to public high school students' claim that a requirement to perform community service after school constitutes an infringement on their right to liberty and privacy; however, in Immediato v. Rye Neck School District, 73 F.3d 454,463 (2d Cir. 1996), that court considered whether the right to personal CT Page 8924 autonomy claimed by students was a "fundamental right" subject to strict scrutiny and decided that the plaintiffs "choice as to how to spend his free time, and whether or not he will perform any volunteer services, is not the stuff to which strict scrutiny is devoted." The Second Circuit declared its reluctance to expand the concept of substantive due process to this issue, in light of the Supreme Court's caution against such extensions in Collins v. City of Harker Heights, 503 U.S. 115, 125,112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992). The Second Circuit found that the alleged infringement on students' liberty was permissible because "the mandatory community service performance rationally furthers [the] state objective [of teaching habits and values of good citizenship]."Immediato v. Rye Neck School District, supra, 73 F.3d 462.
In a case involving a school dress code for public school teachers,East Hartford Education Association v. Board of Education, 562 F.2d 838
(2d. Cir. 1977), the Second Circuit recognized a liberty interest in choosing one's attire, and found that the communicative element of the teacher's refusal to wear a necktie implicated the First Amendment as well. The court found that summary judgment was unwarranted and that the school district must demonstrate a substantial relationship between the dress code and the purposes it hoped to achieve by that regulation. EastHartford Education Association v. Board of Education, supra, 562 F.2d 846.
As Chief Judge Motz of the federal district court of Maryland cogently observed in Isaacs v. Board of Education of Howard County, 40 F. Sup. 2
d 335, 339 (D.Md. 1999), a case involving a public school student's claim that her liberty interest was infringed by a school rule prohibiting the wearing of hats or head coverings to school, there is a difference between regulations requiring alterations to the body, such as requirements to cut hair or shave off beards, and regulations concerning clothing, which do not alter the student's chosen appearance outside of school hours. The former kind of regulations affect a student's right to bodily integrity; the latter do not. This court agrees that since restrictions on the clothing that can be worn in school do not infringe on rights of bodily integrity, they are properly held to be valid if they satisfy the requirement referred in the First, Fourth, Fifth Circuit cases: that they bear a rational relation to achievement of a legitimate state purpose, such as removing a cause of disruption to the educational process. As the Fifth Circuit stated in Stevenson v. Board of Education ofWheeler County, Georgia, supra, 426 F.2d 1158, "[t]he touchstone for sustaining such regulations is the demonstration that they are necessary to alleviate interference with the educational process." Likewise, the Second Circuit noted in East Hartford Education Association v. Board ofEducation, supra, 562 F.2d at 846, that the standard of justification where a First Amendment interest as well as a liberty interest is CT Page 8925 articulated is greater than the standard applicable when only a liberty interest is raised, an apparent indication that the Second Circuit would apply the same standard as the First, Fourth and Fifth Circuits if only a liberty interest were alleged.
Are the facts sufficient?
The plaintiffs take the position that their claims may not be adjudicated upon a motion for summary judgment because the defendants have failed to show what the facts are with regard to the justification for the mandatory limitation of students' choices of attire in school. As has been stated above, a party seeking summary judgment must demonstrate what the facts are and that it is entitled to judgment under those facts. Witt v. St. Vincent's Medical Center, supra, 252 Conn. 373 n. 7;Suarez v. Dickmont Plastics Corp., 229 Conn. 99, 105 (1994); D.H.R.Construction Co. v. Donnelly, 180 Conn. 430, 434 (1980).
The defendants have appended to their brief some excerpts from the testimony at the hearing on the application for a preliminary injunction. The plaintiffs have not raised any procedural objection to the use of the transcripts of this sworn testimony as submissions to be considered by the court pursuant to Practice Book §§ 17-45 and 46. The testimony of a member of the board of education, Debi Schatzle-Baker, included statements that the school district had encountered situations in which the wearing of very large, baggy bluejeans, worn so low on the waist that they dragged on the ground and impeded a student's movements, especially on stairs, had led to problems of safety. (Tr. P. 18). She also testified that before the institution of the school attire policy there had been disciplinary cases arising from students' comparisons of jeans bearing designers' names and less expensive jeans. (Tr. P. 19-20). She did not specify the number or frequency of such events.
The defendants also submitted excerpts from the testimony of a staff member at West Side Middle School, who testified that there had been disputes originating in comparisons of clothing before the policy was enacted. With regard to the issue of the prohibition of bluejeans, Mary Ann Gardiner, whose titles are "Prevention Specialist" and project coordinator of the Safe School Program of West Side Middle School, testified that:
 We have had some instances where students would come down and there would be a conflict over what someone wore, how much it cost, where they bought it, why they wore it, logos, kids that are classified in CT Page 8926 different — especially with blue jeans, I've had kids come down and tell me that type of jean is a weapon jean they wear or that kid is wearing that because he or she is involved in drugs, that child is involved in alternative clothing — that type of issues — so I've seen a lot of that decrease since the jeans have been out of the school and a lot more structure and just the whole behavior and conduct is definitely calmed down.
(Tr. Gardiner Testimony, p. 136).
The defendants' other submissions do not include facts concerning the existence of a problem to be cured, but only expressions of theories concerning the benefits of school uniforms. The defendants assert that, taken together, these submissions establish a factual justification for all of the features of the challenged school attire policy.
Even liberty interests that do not involve fundamental personal rights can be limited only if there is a factual rather than a theoretical or philosophical justification for the limitation. Theories, for example, that long hair will result in disruption or distraction in the classroom, have been held not to be sufficient to justify a reputation limiting students' liberty to wear their hair as they choose. Bishop v.Colaw, supra, 450 F.2d 1073:
 The court believes that the "hair" rule was adopted because of the conviction of school authorities that to permit extreme hair styles would result in disruption or distraction in the classrooms. But the facts do not appear to sustain that fear. Generally, this fear is based upon the idea as stated by the superintendent, that anything out of the ordinary attracts attention and therefore could be disruptive of the educational process. This appears, however, to be more of an educational philosophy than an established scientific fact.
The court in Bishop v. Colaw noted that witnesses at trial had described one incident of a fight and one commotion in the hallway, and that the community favored the regulation requiring short hair; however, the Eighth Circuit found that such evidence was insufficient to support the contention that the hair regulation was necessary to prevent disruptions, and it invalidated the regulation. Bishop v. Colaw, supra, 450 F.2d 1076-1077. CT Page 8927
A school system's regulation of hair length was likewise found not to be supported by the evidence at trial in Holsapple v. Words, supra, 500 F.2d 51.
In conjunction with their opposition to the defendants' motion, the plaintiffs have filed a sheaf of documents, labeled Exhibit F, containing, among other things, reports from the administrators of various school buildings concerning the effect of the implementation of the school attire policy. Some of the survey responses in Exhibit F from a pnot program involving voluntary adherence to the school attire policy report no perceived effect on improvement in focus on education and reduction of disputes; others report a limited effect; others report a decided positive effect. While the defendants' submissions establish a rational basis, under the standard set forth above, for prohibiting baggy jeans worn in a manner that impede stairclimbing, the evidence presented by the defendants with regard to the disruptive effects of other kinds of apparel is limited to the experience of a single staff member at a single school and a very general confirmation from a school board member that some disputes have arisen from conversations about blue jeans.
The excerpts from the testimony of these two witnesses at the prior hearing were not specific as to whether there were two or hundreds of incidents in which the brand names or related expense of clothing played apart. If only an isolated incident involved the wearing of jeans, a regulation that exposes all students in the school system to expulsion not only for wearing jeans but also for wearing colors or styles other than the selected ones may not be justified. In the responses to a survey concerning the phase of the school attire policy in which compliance was optional, several respondents questioned whether the time and attention necessary to enforce the dress code was so great that the disruption of the educational process caused by monitoring student apparel would outweigh the advantages that the policy aims to achieve.
This court does not share the plaintiffs' view that only a scientifically conducted empirical study will satisfy the requirement of showing a rational relationship between the limitation on students' choice of attire and the purpose of the contested regulation. In the context of a motion for summary judgment, however, the defendants have the burden of submitting affidavits and other submissions that are sufficient to support a determination that there is a rational relationship between the prohibition of many colors, styles, and fabrics of clothing and the achievement of the stated objective of removing the cause of disruption to the educational program. The defendants' submission make that showing only with regard to baggy pants that pose a safety hazard. CT Page 8928
The burden is on the movants to show what the facts (as distinguished from the theories or philosophies) are thatjustify a policy that will subject all children in the school system to the risk of suspensions and expulsions. The materials submitted in support of the motion for summary judgment are insufficient to discharge this burden. Accordingly, summary judgment must be denied with regard to the federal constitutional claim of the minor plaintiffs.
State constitutional claims
The plaintiffs claim in the third, fourth and fifth counts of their amended complaint that their suspension and expulsion from the regular educational program and assignment to an alternative program for, among others, students who have been so expelled, violates their right to a public education in violation of Article Eighth, § 1 and ArticleFirst, §§ 7, 8, 9 and 10 of the Constitution of the State of Connecticut.
Article Eighth, § 1 provides that "[t]here shall always be free public elementary and secondary schools in the state. The general assembly shall implement this principle by appropriate legislation." In Conn. Gen. Stat. § 10-220, the general assembly delegated the state's responsibility to provide and administer public education to local and regional boards of education. Connecticut General Statutes § 10-221
provides that boards of education "shall prescribe rules for the management, studies, classification and discipline of the public schools..." In 1996, in Public Act 96-101, codified as Conn. Gen. Stat. § 10-221f, the legislature specifically empowered each local board of education to "specify a school uniform for students in schools under its jurisdiction." The legislative history of § 10-221 f indicates clearly that the legislature considered and rejected limiting language that would have authorized only policies that made the wearing of a school uniform optional. This court finds after reviewing the legislative history of § 10-221 f, that § 10-221 f authorizes boards of education to enact mandatory school uniform policies.
That authority, however, must be exercised in a manner consistent with the plaintiffs' constitutional rights, and § 10-221f must be read to authorize mandatory school uniforms only if the circumstances exist to make such a regulation constitutional, that is, if the regulation meets the test discussed above.
Since the defendants have not, in connection with the motion, sufficiently supported the justification for the regulation with admissible facts, they have likewise not demonstrated that they are CT Page 8929 entitled to judgment on the state constitutional claims of the minor plaintiffs.
Claims of parental authority
The adult plaintiffs have alleged that the enforcement of the school attire policy against the children violations their constitutionally-protected right to exercise parental autonomy. They note the recent support of the United States Supreme Court of the rights of parents to decide upon the actions of their children. Troxel v.Granville, supra, 120 S.Ct. 2054.
In that case, the Supreme Court ruled invalid a Washington statute that gave grandparents and others the right to petition for rights to visit minor children over the objection of their parents. The Court found this statute to constitute a violation of the fundamental rights of parents to make decisions concerning the care, custody and control of their children.
The Court has upheld parental autonomy in cases involving fundamental constitutional rights, such as the right of parents to provide their children with religious instruction. Pierce v. Society of Sisters,268 U.S. 510, 534-35; 45 S.Ct. 571, 69 L.Ed. L 070 (1925) (right of parents to send their children to private religious schools); Wisconsin v.Yoder, 406 U.S. 204, 220-21, 92 S.Ct. 1526, 32 LEd.2d 15 (1972) (right of Amish parents to remove children from public high school to promote religious and cultural values of Amish community).
Where the parental preference involved is not based on some fundamental right such as the exercise of religion, however, the federal courts have found that parental preferences concerning the subject matter of school regulation do not trump the school districts' judgment concerning the effective management of the educational program. Immediato v. Rye NeckSchool District, supra, 73 F.3d 461 (upholding school district's requirement that students perform community service upon a showing of a rational relation to an educational goal).
The adult plaintiffs may well have a right to exercise parental autonomy where a school regulation is not justified according to the test discussed above.
Adjudication of this claim must, like the federal constitutional claims of the minor plaintiffs, await a sufficient showing of the justification for the policy at issue.
Conclusion
CT Page 8930
With the exception of the prohibition against wearing baggy pants that impede student's safety, the defendants have failed to submit undisputed facts adequate to demonstrate the justification of the mandatory prohibitions on the wearing of many kinds of attire by students in the Waterbury public schools. They have failed to meet the standard for resolution of the plaintiffs' claims by summary judgment. Their motion is granted only with respect to the portion of the school attire policy that precludes pants that are so long that they impede students' safety. It is denied with regard to all other provisions of the school attire policy at issue.
 ___________________________ Beverly J. Hodgson Judge of the Superior Court