BOARD OF SELECTMEN OF FRAMINGHAM *vs.* CIVIL SERVICE
COMMISSION & another.

Middlesex.     October 9, 1974. — December 24, 1974.

Present: TAURO, C.J., REARDON, QUIRICO, HENNESSEY, & KAPLAN, JJ.

*Civil Service. Police. Certiorari. Constitutional Law,* Due process of law. *Words,* "Suspension."

A police officer may be suspended for an indefinite period extending for so long as he persists in violating a department regulation. [551-552]
On review in the Superior Court of a decision of the Civil Service Commission holding that a police officer's suspension for violation of a department rule was improper because the suspension was for an indefinite period, the judge, holding that an indefinite suspension was proper, erred in inferring that the commission had also found a compelling interest for the rule and therefore just cause for the suspension, merely because the commission had failed to adopt that portion of the hearing examiner's report which concluded that no compelling interest had been shown. [552-554]
Review of authorities pertaining to the right of the State to regulate hair length. [555-557]

PETITION for a writ of certiorari filed in the Superior Court on January 26, 1973.

The case was heard by *Mason, J.*

*Robert H. Quinn,* Attorney General (*Edward D. Kalman,* Assistant Attorney General, with him) for the Civil Service Commission.

*Daniel D. Levenson (Jonathan J. Margolis* with him) for the intervener, Robert Ablondi.

*Arthur M. White* for the Board of Selectmen of Framingham.

KAPLAN, J.    The Civil Service Commission (commission) appeals from a decision of a judge of the Superior Court which, reversing the commission, suspends the intervener, a tenured policeman of the town of Framingham, until he conforms to a regulation of the police department concerning the hair styles that police officers in that town are entitled to affect. The Framingham board of selectmen (board), as "appointing authority," suspended the policeman for violation of the regulation; on review the commission reversed the board; on certiorari the judge of the Superior Court reversed the commission and affirmed the board's suspension order. We agree with the judge that the ground on which the commission went was wrong. The ground was that suspension cannot properly be for an indefinite period. But we disagree with the judge as to the disposition of the case. The commission, to which is committed in the first instance under the civil service law the question whether the board's order of suspension was "justified," did not decide that issue and rendered an incomplete and unclear decision, which in turn infected and confused the decision of the judge. Accordingly, there must be a reversal for remand to the commission.

In May, 1971, upon recommendation of the chief of police, the board adopted Rule 79A of the Rules and Regulations of the Framingham police department, reading as follows: "All officers shall upon reporting to duty be clean shaven, hair shall be neatly trimmed and not overhanging a button shirt collar, the neck shall be kept clean shaved, side burns may not extend below the bottom of the

ear and shall be straight and neatly trimmed and not allowed to flare out from the ear. Beards and goatees shall not be worn. Neatly trimmed mustaches will be allowed." (As adopted, the rule was somewhat different from that proposed by the chief of police. He had sought to ban moustaches, but that provision was changed when one of the selectmen objected that he could not in good faith vote to eliminate moustaches since he himself had worn one for many years.)

On July 21, 1972, one Robert Ablondi, a patrolman with nearly five years' service, was charged by the board with violating Rule 79A, and a hearing was held before it pursuant to G. L. c. 31, § 43 (a), as amended through St. 1970, c. 72, § 1. The board concluded that Ablondi had allowed his hair to overhang his collar by about one inch, and ordered him suspended for "just cause" until he complied with the rule.[1]

Ablondi requested a hearing before the commission under § 43 (b), as amended through St. 1970, c. 72, § 2, which provides in this connection that "[i]f the commission finds that the action of the appointing authority was justified, such action shall be affirmed; otherwise, it shall be reversed . . .." At a hearing held before Mr. Albert R. Mezoff, a hearing officer of the commission, on October 16, 1972, Ablondi conceded his noncompliance with the rule, but attacked the power of the board to adopt it, contending that it was irrelevant to the performance of police duties, infringed his personal liberty, and was unconstitutional. The hearing took the following course. Five witnesses were heard, the chief of police, two members of the board, Ablondi himself, and an "expert" on his behalf. The chief of police testified that the primary reason for his opposition to long hair was that it represented a potential physical danger to a policeman in the performance of his duty: an assailant might pull his hair; he might have difficulty in using a gas mask. There was contrary testimony that

---

[1] The critical words of § 43 (a) are: "He shall not be discharged, removed, suspended for a period exceeding five days . . . except for just cause . . .."

neither possibility was in practice serious. The police chief stated that another reason for adopting the rule was to insure that the police presented a neat public image. He denied that he himself had any feeling against long hair, but he said that although lay people could look neat with long hair, policemen could not. It was also asserted that complaints had been received from the public about longhaired policemen, but admittedly none was in writing. Ablondi testified that much of his work as a policeman was with young people, and that his good relations with them were due at least in part to his hair style.

Upon this record, the hearing officer found as the main "subsidiary facts," "[t]hat the basis of the adoption of Rule 79A rested solely on appearance and had no relationship to the performance of police duties" (finding No. 5), and "[t]hat no compelling interest was shown here by the Appointing Authority for the purpose or justification of the adoption of Rule 79A." (Finding No. 12).[2] On his findings the hearing officer was "inclined to conclude" that the appointing authority had "no just cause" for suspension, as the rule "had no valid or rational basis related to the performance of police work." He went on to say that if the commission felt that it had no authority or jurisdiction to pass on the validity of the rule, then just cause had been established. However, the hearing officer had a problem with the punishment that had been imposed. He thought that a suspension without a definite limit of time was in any case improper, and he therefore recommended reversal of the board's order and reinstatement of the employee.

The report of the hearing officer having been delivered to the commission for action, the commission in its decision of December 19, 1972, adopted finding No. 5, that the basis of the rule rested solely on appearance and had no relation to the performance of police duties. But the commission omitted any reference to finding No. 12, that no compelling interest was shown by the board; the commission neither

---

[2] There were findings of twelve "subsidiary facts" in all. See note 3 below.

adopted that finding nor made a contrary finding. Neither did it comment on its authority or lack thereof to declare the rule invalid, or state any conclusion as to whether the board's action was "justified" in substance. Rather it held only that the suspension, being for an indefinite period of time, was improper, and ordered Ablondi reinstated on that ground.[3]

The board then petitioned the Superior Court for a writ of certiorari under G. L. c. 249, § 4 (before amendment by St. 1973, c. 1114, § 289), to set aside the commission's order and confirm Ablondi's suspension. Ablondi was admitted to the proceedings as an intervener. The judge on consideration of the return to the writ held that the suspension was not improper by reason of its indefinite term, so as matter of law the commission should not have set it aside on that ground. But going further, he concluded that the commission had by implication found the suspension for violation of the rule "justified" apart from the question of the form of the suspension order, even though the commission had not explicitly said so. The judge also expressed his favorable opinion about the validity of the rule, as against the challenge that it infringed on a constitutionally protected right to wear one's hair as one pleased. The writ accordingly issued and the board's order was reinstated.

We agree with the judge of the Superior Court that there was no ground in law for the commission's holding the suspension order to be improper solely because it lacked a definite date of termination. (Indeed Ablondi himself does not argue in his brief that the punishment would be irregular if just cause were shown.) Whether suspension for a completed and noncontinuing delict must always have a fixed duration, we are not called on to decide. But we see no necessary impropriety in suspending an officer for so long

---

[3] The full text of the commission decision was: "Voted: To accept the report of the Hearing Officer, to adopt findings of fact 1 through 11, that the action of the appointing authority constitutes an indefinite suspension in that it does not spell out a specific period of time, and that this type of punitive action violates Chapter 31 and adjudicated cases under it, and that therefore the action of the appointing authority is reversed and the employee is to be reinstated to his position without loss of compensation."

as he persists in a violation that is going on from day to day; here a suspension of fixed duration might well seem inapt, for further hearings and further suspensions would be in the offing, unless, indeed, the officer by sitting out a single suspension could earn future immunity from discipline for the offense. In *Mayor of Newton* v. *Civil Serv. Commn.* 333 Mass. 340, 343-344 (1955), the court described a suspension as "a temporary withdrawal or cessation . . . as distinguished from permanent severance," quoting from *Bois* v. *Mayor of Fall River,* 257 Mass. 471, 472 (1926); it said also, quoting from *Commissioner of Labor & Indus.* v. *Downey,* 290 Mass. 432, 434 (1935), that "[s]uspension imports the possibility or likelihood of return to the work when the reason for the suspension ceases to be operative. Dismissal imports an ending of the employment." Thus the gist of "suspension" is that the employee still has a chance to return to work and is not foreclosed. An indefinite suspension with return to work at the complete discretion of the appointing authority might indeed be bad as providing cover for what was in truth a termination of employment, but that is not the present case. It has been argued that St. 1969, c. 45, § 1, codified at G. L. c. 31, § 1, has made some change by defining "suspension" as the "temporary, involuntary separation from service for just cause," but that definition is compatible with what has been said, and it does not appear that the statute was intended to alter the existing view of "suspension."

However, the judge's ultimate ruling — that Ablondi deserved suspension on the merits — was not properly founded. On certiorari the judge is not to make independent findings of fact where the agency has made none, any more than he may reverse or revise a decision of the agency merely because of a disagreement as to how evidence should have been weighed or what facts should have been found. See *Commissioner of Pub. Works of Quincy* v. *District Court of East Norfolk,* 258 Mass. 444, 445 (1927); *Selectmen of Wakefield* v. *First Dist. Court of E. Middlesex,* 262 Mass. 477 (1928); *Bunte* v. *Mayor of Boston,* 361 Mass. 71 (1972). In the present case the

statute requires that suspension rest on "just cause" and charges the commission with the duty of deciding whether such cause existed. Here the commission never found just cause. Its decision skirts this issue and takes refuge in the technical point of the character of the punishment. The judge, perhaps recognizing the limitations on his power in certiorari cases, attempted to piece out a finding of "just cause" from within the commission's decision. He did this by saying that "[t]he Commission, in not adopting the finding [No. 12] of the Hearings Officer that no compelling interest was shown by the Appointing Authority for the purpose or justification of the adoption of Rule 79A, would appear to negate the rationale for the finding [No. 5] that the basis of the adoption of Rule 79A rested solely on appearance and had no relationship to the performance of police duties." Whence the judge concluded that "[t]he ruling of the Commission imports a finding that the selectmen had just cause but exceeded their authority in suspending for an indefinite term." We think the judge's leap of reasoning was too drastic. It does not follow from the omission to make a finding that no compelling interest for the rule had been shown, that the contrary finding of a legally satisfactory support for the rule must necessarily have been made, although it was not expressed. Ironically enough, the Attorney General, representing the commission, argues in his brief in this court that the suspension, apart from its supposed technical defect, was without just cause.

The judge's error may be exposed in another way. He says that the hearing officer's report tendered two alternatives to the commission: "(1) to find that the Appointing Authority had no 'just cause', or (2) that the Appointing Authority had 'just cause'; but the penalty imposed was illegal." We think this misreads the hearing officer's report as well as the action of the commission. The hearing officer's report suggested that the commission could avoid the question of just cause in the substantive sense by confining its decision to the technical point of the indefiniteness of the suspension, and this is what the commis-

sion did, although sowing confusion, and the potential for just the kind of error the judge made, by adopting finding No. 5 but not finding No. 12. In effect the judge in this case made his own independent finding of just cause for suspension — and this was beyond his proper sphere on certiorari.

It may be contended that, despite the command of the civil service statute that the commission decide just cause, the judge on certiorari might himself initially decide the issue where the evidence presented before the commission was so clear that only one answer was possible as matter of law. Were that argument accepted, it would not save the judge's decision, for he did not purport to rule on that basis, and the facts were in dispute. It would in all events be doubtful wisdom, except possibly in the clearest of cases, for a judge to act without the benefit of a judgment on such material questions by the commission with its specialized function in matters of the civil service.

Reversal for remand to the commission is therefore in order, and because of the confusion in the present record we think the commission should undertake a fresh hearing.

The commission will need to take up and consider the factual matters underlying the issue of the constitutional validity of the regulation since these matters are here intrinsic to a decision as to "just cause." See *Bettigole* v. *Assessors of Springfield,* 343 Mass. 223 (1961); *Stone* v. *Springfield,* 341 Mass. 246, 247-248 (1960). So far as the hearing examiner intimated that the commission might casually avoid the task, he was incorrect. Of course in saying so we cast no doubt on the fundamental rule that the ultimately controlling decision of a constitutional issue is for the courts. See, e.g., *Coffee-Rich, Inc.* v. *Commissioner of Pub. Health,* 348 Mass. 414 (1965). Cf. *School Comm. of Springfield* v. *Board of Educ.* 362 Mass. 417, 430-432 (1972) (statute requires board to release funds on receipt of racial balance plan from school committee; inquiry into constitutionality of plan is for court).

The constitutional issue is rooted in facts, many of them localized to the town of Framingham and its police force. There is the question of the relationship of hair length to

distinctive police activities, and the further question of hair length as conditioning police morale and discipline and the public's attitude toward the police. As to which side will have the "burden of persuasion" in respect to the validity of the regulation, *Richards* v. *Thurston,* 424 F. 2d 1281, 1283 (1st Cir. 1970), points out that this problem is only a surface manifestation of another problem: whether a regulation of how a person shall wear his hair, like an economic regulation, is presumptively valid and stands unless shown to have no traceable connection with a legitimate State interest, see *Commonwealth* v. *Henry's Drywall Co. Inc. ante,* 539 (1974); or whether a constitutionally protected "liberty" or right of the person is involved so that the regulation falls unless an outweighing State interest is demonstrated. If the latter view is affirmed, then the "burden" falls on the government.[4] In *Leonard* v. *School Comm. of Attleboro,* 349 Mass. 704 (1965), noted in 14 A. L. R. 3d 1192 (1967), we upheld a school committee which forbade attendance of a student until his hair was cut to an acceptable length. This was the first "hair" case decided by any court. We dealt mainly with the breadth of the discretion of a school committee and disposed of constitutional claims in a sentence; we did not consider whether a "liberty" should be recognized or where a "burden" might then rest. Since that decision many cases have arisen in other jurisdictions, most concerning students, some concerning firemen or the police; the liberty referred to has been widely, though not unanimously, recognized, and the government correspondingly called on to justify infringement of it. Compare, in the Federal circuits, *Richards* v. *Thurston,* 424 F. 2d 1281 (1st Cir. 1970); *Bishop* v. *Colaw,* 450 F. 2d 1069 (8th Cir. 1971); *Massie* v. *Henry,* 455 F. 2d 779 (4th Cir. 1972); *Stull* v. *School Bd. of Western Beaver Junior-Senior High Sch.* 459 F. 2d 339 (3d Cir. 1972); *Arnold* v. *Carpenter,* 459 F. 2d 939 (7th Cir. 1972); *Dwen* v. *Barry,* 483 F. 2d 1126 (2d Cir. 1973) (specific constitutional right), with *Jackson* v. *Dorrier,* 424

---

[4] There was rather inconclusive discussion between the hearing officer and counsel in the present case about which side had the laboring oar.

F. 2d 213 (6th Cir. 1970), cert. den. 400 U. S. 850 (1970); *King* v. *Saddleback Junior College Dist.* 445 F. 2d 932 (9th Cir. 1971), cert. den. 404 U. S. 979 (1971); *Karr* v. *Schmidt,* 460 F. 2d 609 (5th Cir. 1972) (eight to seven), see, on motion to vacate stay, 401 U. S. 1201 (1971) (no such right). See also *Freeman* v. *Flake,* 448 F. 2d 258 (10th Cir. 1971).

In his discussion of the constitutionality of the regulation, the judge cited the *Richards* case approvingly (it involved a student). We share the general views expressed in that case. As the *Richards* court wrote, "the Due Process Clause of the Fourteenth Amendment establishes a sphere of personal liberty for every individual," and "the enumeration of certain rights in the Bill of Rights has not been construed . . . to preclude the existence of other substantive rights implicit in the 'liberty' assurance of the Due Process Clause." *Id.* at 1284. See *Pierce* v. *Society of Sisters,* 268 U. S. 510, 534-535 (1925) (right to send children to private school); *Meyer* v. *Nebraska,* 262 U. S. 390, 399-400 (1923) (right to have children taught the German language). It may be suggested that the right to wear one's hair according to one's own taste is too trivial a matter to be worthy of constitutional note. But " 'liberty' seems to us an incomplete protection if it encompasses only the right to do momentous acts." We conclude with the *Richards* court that "within the commodious concept of liberty, embracing freedoms great and small, is the right to wear one's hair as he wishes." *Id.* at 1284, 1285.

That the recognition of such a right, with the casting of a burden of justification on the government (here the board of selectmen), does by no means necessarily doom a hair regulation is evident from the results of the cases; and courts have been notably freer in finding that a sufficient governmental interest has overcome the right[5] in cases concerning public employees than in those concerning students. As to firemen, see *Yarbrough* v. *Jacksonville,* 363

---

[5] A government interest rising to the level of a "compelling" interest, as in *Shapiro* v. *Thompson,* 394 U. S. 618, 634 (1969), need not be shown. See *Richards* v. *Thurston, supra,* at 1284.

F. Supp. 1176 (M. D. Fla. 1973) (regulation valid where effect on safety shown); but see *Lindquist* v. *Coral Gables,* 323 F. Supp. 1161 (S. D. Fla. 1971) (regulation invalid; no such effect shown). As to police, see *Stradley* v. *Andersen,* 478 F. 2d 188 (8th Cir. 1973); *Burback* v. *Goldschmidt,* 17 Ore. App. 181 (1974) (regulations justified on grounds of discipline[6] and of public respect furthering effective performance).[7] The case of *Dwen* v. *Barry,* 483 F. 2d 1126 (2d Cir. 1973), emphasizes again the importance of a factual demonstration, as it reversed a summary disposition against a policeman and remanded for trial with respect to the governmental interest. It is worth noting that where the reaction of the public is of some considerable significance, regulations appropriate to one location at a particular time may be inappropriate to another place or time. Thus the District Court opinion, 349 F. Supp. 1120 (D. Neb. 1972), affirmed in *Stradley* v. *Andersen, supra,* observed that the regulation in question attempted to gauge current community standards and to estimate what tolerance in grooming would be acceptable.[8]

> *Order of the Superior Court reversed, with direction to remand to the Civil Service Commission.*

---

[6] We must warn against the too hasty assimilation of the police with the military for the present purpose. *Anderson* v. *Laird,* 437 F. 2d 912 (7th Cir. 1971), cert. den. 404 U. S. 865 (1971), a military case mentioned by the judge below, in fact reaches its conclusion by first distinguishing the claim of one in military service from that of a civilian. *Id.* at 914. See also *Dwen* v. *Barry, supra,* at 1128, rejecting the military/police analogy in a case involving the police.

[7] See also two cases sustaining police regulations but without recognizing a specific constitutional right. *Greenwald* v. *Frank,* 40 App. Div. 2d (N. Y.) 717 (1972), affd. 32 N. Y. 2d 862 (1973); *Akridge* v. *Barres,* 122 N. J. Super. 476 (1973), affd. 65 N. J. 266 (1974).

[8] The only decision cited in *Leonard* v. *School Comm. of Attleboro,* 349 Mass. 704 (1965), regarding regulation of student appearance, *Pugsley* v. *Sellmeyer,* 158 Ark. 247, 254 (1923), upheld a school's refusal to admit an eighteen year old girl because she wore "face paint or cosmetics." The year was 1923. The decision could hardly be carried over intact to 1974. In fact the pace of change appears to have accelerated steeply in recent years.