BOARD OF SELECTMEN OF FRAMINGHAM *vs.* CIVIL
SERVICE COMMISSION & another.[1]

Middlesex.    February 16, 1979. — April 17, 1979.

Present: ARMSTRONG, GREANEY, & PERRETTA, JJ.

*Civil Service Commission,* Findings. *Police,* Suspension, Hair length,
Regulations. *Due Process of Law,* Hair length.

The Civil Service Commission erred in requiring a town's board of
    selectmen to demonstrate a compelling governmental interest for
    a rule regulating the hair length of police officers; proof that the
    rule was designed to promote appearance and cultivate morale in
    the police department was sufficient to establish the constitutional
    validity of the rule. [402-406]
Once a police department rule regulating the hair length of police
    officers was determined to be constitutionally valid, an officer's
    refusal to conform to the rule constituted just cause for suspension
    under G. L. c. 31, § 43(*b*). [406-408]

CIVIL ACTION commenced in the Superior Court on August 21, 1975.

The case was heard by *Larkin,* J., a District Court judge
sitting under statutory authority.

*Carl Valvo,* Assistant Attorney General, for the Civil
Service Commission.

*Jonathan J. Margolis,* for Robert Ablondi, intervener.

*Aaron K. Bikofsky,* Town Counsel, for the Board of
Selectmen of Framingham.

GREANEY, J. This is an appeal from a judgment entered
in the Superior Court reversing a decision of the Civil
Service Commission (commission). The commission determined that a police officer of the town of Framingham

---

[1] Robert Ablondi, the police officer involved, was permitted to intervene in the proceedings.

could not be suspended for just cause by the Framingham board of selectmen (the board) as his appointing authority until such time as he should comply with a regulation of the Framingham police department regulating hair styles, on the ground that the rule in question was constitutionally infirm. We agree with the judge that the commission applied the wrong standards to its determination whether the suspension was justified, and, as a result, we affirm the judgment entered in the Superior Court reversing the commission and affirming the action of the board.

The facts and procedural history of the case which are necessary to a discussion of the substantive issues are now summarized.[2] In May, 1971, the board, acting pursuant to a request by the chief of police of the town of Framingham, adopted for its police department a grooming regulation, rule 79A, set forth in the margin.[3]

On July 21, 1972, Robert Ablondi, a patrolman with the department with nearly five years' service, was charged by the board with violating rule 79A. The officer received a hearing pursuant to the provisions of G. L. c. 31, § 43(*a*), as amended through St. 1970, c. 72, § 1,[4] after which the board determined that the officer's hair length was in violation of the rule. The board ordered him suspended for just cause until such time as he should comply with the rule.

---

[2] Some of the prior history of this case is contained in *Selectmen of Framingham* v. *Civil Serv. Commn.*, 366 Mass. 547 (1974).

[3] Rule 79A of the Rules and Regulations of the Framingham Police Department provides that "[a]ll officers shall upon reporting to duty be clean shaven, hair shall be neatly trimmed and not overhanging a button shirt collar, the neck shall be kept clean shaved, side burns may not extend below the bottom of the ear and shall be straight and neatly trimmed and not allowed to flare out from the ear. Beards and goatees shall not be worn. Neatly trimmed moustaches will be allowed."

[4] General Laws c. 31, § 43(*a*), provided in relevant part that a civil service employee "shall not be discharged, removed, [or] suspended for a period exceeding five days . . . except for just cause."

The officer then requested and received a hearing before the commission under the provisions of G. L. c. 31, § 43(*b*), as amended through St. 1970, c. 72, § 2.[5] The officer admitted his noncompliance with the regulation but asserted that the rule was irrelevant to the conduct of police work, that it infringed upon his personal liberty, and that it was, as a result, unconstitutional.[6] Upon the recommendation of its hearing officer, the commission determined that the board's action in imposing an indefinite suspension was improper. The commission did not deal with the underlying issue of the validity of the rule, or with the question whether the action of the board was justified. After review in the nature of certiorari the decision of the commission was overturned by a Superior Court judge, who concluded that the commission had by implication found the suspension justified.

Appellate review of the decisions of the commission and the judge was promptly sought. In *Selectmen of Framingham* v. *Civil Serv. Commn.*, 366 Mass. 547 (1974) (*Framingham I*), the Supreme Judicial Court determined that the sanction of an indefinite suspension would be appropriate for the continuing violation of a regulation,[7] that the commission had not dealt with the question of just cause, and that the judge had erred in concluding that the commission had found just cause in the absence of any finding to that effect by the commission. The court recognized that the validity of the regulation and just cause were intertwined and ordered the matter remand-

---

[5] General Laws c. 31, § 43(*b*), provided in relevant part that "[i]f the commission finds that the action of the appointing authority was justified, such action shall be affirmed; otherwise it shall be reversed . . . ."

[6] The claim of unconstitutionality was premised on the Federal Constitution. No contentions have been raised under the Massachusetts Declaration of Rights.

[7] The court found "no necessary impropriety in [indefinitely] suspending an officer for so long as he persists in a violation that is going on from day to day." *Framingham I, supra* at 551-552.

ed to the commission for a new hearing so that it could "take up and consider the factual matters underlying the issue of the constitutional validity of the regulation since these matters are here intrinsic to a decision as to 'just cause' " (*id.* at 554), with the burden of justification of the regulation placed on the board, though a "compelling [governmental] interest . . . need not be shown." *Id.* at 556 & n.5.

After entry of an order of remand, a second hearing officer of the commission took evidence, made findings, and ultimately concluded that the regulation was constitutionally invalid. The commission adopted the second hearing officer's report and, on June 25, 1975, rendered a decision again reversing the board's suspension and ordering that the police officer be reinstated.[8] The board sought review in the nature of certiorari,[9] and a judge of the Superior Court once again remanded the matter to the commission with an order that it "render a decision commensurate with the standards set forth in [*Framingham I*]." On January 29, 1976, the commission for a second time adopted the findings of the hearing officer and concluded that the rule did not bear a valid relationship to the performance of the duties of a police officer and did not affect police morale or discipline.[10]

[8] The full text of the commission decision was "Voted: To acknowledge receipt of the Hearing Officer's report, adopt the findings and conclusions of the hearing officer, and that there was no just cause for the action since it was based solely upon a rule which is of doubtful constitutionality, and which has been supported by no demonstration of a compelling governmental interest; and the action is reversed and the appointing authority is hereby ordered to restore the employee to the position of Patrolman without loss of compensation. The decision in this case is not to be construed as a finding by the Commission that any regulation dealing with personal appearance is per se impermissible."

[9] The board based its petition for review on the contention that the hearing officer and the commission had erroneously applied a requirement that the board establish a compelling governmental interest in justification of the rule, contrary to the instructions of the Supreme Judicial Court on that point.

[10] The full text of the commission decision was: "Voted: To acknowledge receipt of the Hearing Officer's report and to adopt the findings

After the commission entered its order, two decisions of the United States Supreme Court on the topic of the validity of hair grooming regulations (*Kelley* v. *Johnson,* 425 U.S. 238 [1976] [*Kelley*], and *Quinn* v. *Muscare,* 425 U.S. 560 [1976] [*Quinn*]), clarified the constitutional status of such rules in a manner favorable to the position of the board. The board again sought review of the commission's decision, and a judge, after reviewing the entire record in light of the standards to be applied to such regulations as articulated by the Supreme Court, determined that the commission had erred as a matter of law and that the error required that the decision of the commission be set aside. The case reaches us in this posture.

1. The order of remand entered after the decision in *Framingham I* required the commission to find facts with regard to the constitutional validity of the rule. This task

of fact in their entirety. In complying with the Supreme Judicial Court's directive that 'the commission will need to take up and consider the factual matters underlying the issue of constitutional validity of the regulation since these matters are here intrinsic to a decision as to "just cause" ' (*Board of Selectmen,* at p. 654), the Commission finds: 1) That the Town of Framingham failed to support its contention that hair length as restricted by Rule 79A has any valid relationship to the ability or effectiveness of a police officer to perform his duties in terms of the danger posed by an assailant, ability to wear a gas mask, public attitudes toward the police, or police morale or discipline. 2) That because Rule 79A, insofar as it deals with permissible hair length, has no valid or rational relationship to the performance of police work in the Town of Framingham, the Appointing Authority has failed to establish a sufficient governmental interest in prohibiting hair length in excess of that allowed by Rule 79A. 3) That Rule 79A, insofar as it deals with permissible hair length, infringes on the personal liberty of the employee.

"Therefore, the Commission concludes that there was no just cause for Officer Ablondi's suspension. Accordingly, the Commission reverses the action of the Appointing Authority and orders Officer Ablondi restored to his position as Patrolman with the Framingham Police Department without loss of compensation.

"The decision in this case is not to be construed as a finding by the Commission that any regulation dealing with personal appearance is per se impermissible."

was assigned to the commission with specific directions requiring the board to justify the validity of the rule by a demonstration of a sufficient governmental interest for its existence, with the recognition that the constitutional validity of the regulation was intrinsic to a decision by the commission as to the presence of just cause. A review of the findings of the commission's second hearing officer who conducted the hearing under the scope of the terms of that order of remand reveals that his findings and conclusions (and consequently the commission's subsequent decision based on those findings and conclusions) were predicated upon the perception that the rule would be invalid unless it bore a substantial relationship to the actual performance of police work, and that justification for the regulation in terms of the creation of a uniform appearance among police officers in the department would not be a sufficient reason to validate the rule. He found that the selectmen could not demonstrate a "compelling interest" for the rule and as a result that the board did not have just cause for the suspension of the employee.[11] The commission agreed.

After the commission reached its decision, as mentioned above, the Supreme Court of the United States in

---

[11] The second hearing officer found that the rule had been properly adopted. He also found that the chief of police felt that the rule had the purpose of promoting neatness, which the chief felt influenced both the morale of the department and the respect of the public, and that the rule also applied to protect the safety of the police officer because long hair might be grabbed to disable an officer and might also interfere with a gas mask. The hearing officer rejected the results of a public opinion poll indicating that the appearance of neatness in a policeman was important to the department's public image. He concluded that hair length was not a safety factor, that the employee's hair length had no effect on the morale of the department as a whole, though some officers were troubled by it, and that the officer's hair length had no adverse effect on the discipline of the department. He also concluded that the rule was prompted solely by a concern for the general appearance of police officers and as a result "the appointing authority did not show a compelling interest for the rule" so that the employee's right to wear his hair longer than the length set out in the rule "outweighs the appointing authority's interest."

the *Kelley* and *Quinn* cases considerably narrowed the scope of inquiry as to the constitutional validity of grooming regulations of the type in issue here, that court holding that such regulations are constitutionally valid if designed to regulate a police officer's appearance alone and apart from any other considerations.

The *Kelley* case considered the validity of a hair grooming regulation[12] of a local police department against a claim that it impermissibly infringed upon the constitutional rights of a police officer under the First and Fourteenth amendments to the United States Constitution in that the regulation was not based upon the generally accepted standard of grooming in the community and placed an undue restriction upon the officer's activities therein. The Court of Appeals had held the regulation invalid because the police department had "failed to make the slightest showing of the relationship between its regulation and the legitimate interest it sought to promote." *Dwen* v. *Barry*, 483 F.2d 1126, 1130-1131 (2d Cir. 1973).[13]

The United States Supreme Court reversed. It stated with regard to a local government's decision as to the grooming of its police officers that "[c]hoice of organization, dress, and equipment for law enforcement personnel is a decision entitled to the same sort of presumption of legislative validity as are state choices designed to promote other aims within the cognizance of the State's po-

---

[12] The grooming regulation in issue was as follows: "Hair shall be neat, clean, trimmed, and present a groomed appearance. Hair will not touch the ears or the collar except the closely cut hair on the back of the neck. Hair in front will be groomed so that it does not fall below the band of properly worn headgear. In no case will the bulk or length of the hair interfere with the proper wear of any authorized headgear. The acceptability of a member's hair style will be based upon the criteria in this paragraph and not upon the style in which he chooses to wear his hair." *Kelley*, at 240 n.1.

[13] The individual parties had changed by the time the case reached the United States Supreme Court; it reached that court under the name *Kelley* v. *Johnson*.

lice power," that a State is not required to establish a "genuine public need" for the specific regulation, and that an officer must "demonstrate that there is no rational connection between the regulation, based as it is on the county's method of organizing its police force, and the promotion of safety of persons and property." *Kelley, supra* at 247. The court observed that "similarity in appearance of police officers is desirable" and that the need to make officers "readily recognizable to the members of the public, or a desire for ... esprit de corps" is a sufficiently rational justification for a grooming regulation. *Id.* at 248. The court noted that "the hair-length regulation cannot be viewed in isolation, but must be rather considered in the context of the county's chosen mode of organization for its police force. ... Neither this Court, the Court of Appeals, nor the District Court is in a position to weigh the policy arguments in favor of and against a rule regulating hairstyles as a part of regulations governing a uniformed civilian service." *Id.* at 247-248.

The *Quinn* case followed shortly after the *Kelley* decision and commented upon a local fire department's hair grooming regulation. In a per curiam decision dismissing certiorari as improvidently granted, the Supreme Court, relying on *Kelley,* noted that the regulation was supportive of "the overall need for discipline, esprit de corps, and uniformity" and concluded that any factual determination concerning a safety justification for the rule was "immaterial." *Quinn* v. *Muscare, supra* at 562-563.

The judge below was obligated in his review of the decision of the commission to consider the entire record and reverse the decision of the commission if he determined that it was based upon an error of law.[14] In making this inquiry he was also under an obligation to follow the

---

[14] General Laws c. 31, § 45, as appearing in St. 1970, c. 711, provided in pertinent part that a court reviewing a decision of the commission shall confine itself to the record and "may set aside and reverse the decision of the commission if it determines that such decision is ... (c) based upon an error of law."

fundamental rule that the "ultimately controlling deci-
sion of a constitutional issue is for the courts." *Framing-
ham I*, 366 Mass. at 554. See also *Coffee-Rich, Inc.* v.
*Commissioner of Pub. Health*, 348 Mass. 414 (1965);
*School Comm. of Springfield* v. *Board of Educ.*, 362 Mass.
417, 430-432 (1972). On application of these principles, it
is obvious to us, as it was to the judge, that, in light of the
*Kelley* and *Quinn* decisions, the commission used the
wrong standard to measure the constitutional validity of
the regulation by looking for a factual justification in
terms of proof by the board of a compelling governmental
interest for the rule. The findings of the hearing officer
that the rule was designed to promote appearance and
cultivate morale among some members of the depart-
ment and respect by the public was enough to settle the
rule's validity within the guidelines for rules of this type
set forth in *Kelley* and *Quinn*, as those cases remove from
inquiry by the courts and agencies in the position of the
commission the evaluation of competing policy interests
in favor of and against police hair grooming regulations
that are not so irrational as to be branded arbitrary.[15] It
follows, as a consequence, that the commission's decision
was wrong as a matter of law.

2. The commission and the intervener both argue the
further point that while the regulation may be valid in a
constitutional sense, it may not be valid when measured
by the State law standard set forth in G. L. c. 31, § 43(*b*),
requiring the existence of just cause before a civil service

---

[15] In fairness to the commission and its hearing officer, it acted in
compliance with the terms of the order of remand to it without the
benefit of these decisions which removed much of the turbidity that
had existed in the area before their time. The Attorney General in his
brief on behalf of the commission concedes that the *Kelley* and *Quinn*
decisions make "clear that the test of constitutionality for police hair-
length regulations is merely whether they are conceivably related to
police work. Any factual determination that a particular hair-length
regulation has no relationship whatsoever to the performance of po-
lice duties is immaterial." The argument of the intervener to the effect
that the rule is still irrational is not persuasive.

employee can be suspended. Thus, they argue that the commission has the right to, and indeed must, examine afresh the factual premises underlying the rule to determine whether it has a sufficient relationship to actual job performance to constitute just cause for a suspension. We disagree with the tautological implications of this argument and conclude that disobedience of a valid regulation constitutes justification for suspension. We do not need to consider whether in an appropriate case the commission in its consideration of a different regulation from the one before us may make an inquiry into the validity of the rule used as the basis for the discipline of an employee. But in the narrow context of the regulation in issue here, we rule that once the regulation has been determined to be valid, under the standards set forth in the *Kelley* and *Quinn* decisions, a refusal to conform to it constitutes just cause for a suspension.

A reading of the second hearing officer's findings indicates an assumption that the failure to comply with a valid regulation would constitute sufficient justification for the suspension. All his findings and conclusions are related to the validity of the rule, and the plain thrust of his decision is that the appointing authority did not have just cause to suspend the officer because the rule was invalid.[16] The Supreme Judicial Court held in *Framingham I* that the validity of this regulation in a constitutional sense bore directly on the issue of just cause. *Framingham I, supra* at 554. "The authority to establish a police force would be futile if it did not carry with it, at least by implication, the authority to enact reasonable rules for the effective administration of the force and to compel obedience to them by reasonable means." *Ryan* v. *Marlborough*, 318 Mass. 610, 612 (1945). The findings of the second hearing officer are sufficient to uphold the

---

[16] Furthermore, the first hearing officer was of the opinion that, if the commission did not have authority to pass on the validity of the rule, just cause had been established.

rule's validity under current standards for appraisal of such regulations. As a result it follows that disobedience of a valid regulation constitutes reasonable justification for the imposition of an appropriate sanction against the offending employee and creates a basis for discipline that is not "a frivolous or wholly unsatisfactory or incompetent ground." *McKenna* v. *White,* 287 Mass. 495, 497 (1934).[17]

We conclude from an examination of the entire record that the commission's decision was premised upon an error of law, that rule 79A is valid, and that noncompliance on the part of the officer with the regulation constituted just cause for his suspension.

*Judgment affirmed.*

---

[17] See also *Silverio* v. *Municipal Court of the City of Boston,* 355 Mass. 623, cert. denied, 396 U.S. 878 (1969), where the dismissal of a police officer was upheld for his failure to comply with a departmental rule [and the duty imposed by his office to answer questions concerning criminal activity of which he was aware despite his right to claim his privilege against self-incrimination]. See also *Akridge* v. *Barres,* 118 N.J. Super. Ct. 557 (1972), aff'd 65 N.J. 266 (1974), cert. denied, 420 U.S. 966 (1975), where the city's interest in the appearance of police officers was found to be a sufficient basis to validate a departmental grooming regulation and justify the suspension of an officer under a "just cause" statute. Compare *Stradley* v. *Andersen,* 478 F. 2d 188 (8th Cir. 1973), and *Greenwald* v. *Frank,* 70 Misc. 2d 632 (Sup. Ct.), modified and aff'd, 40 App. Div. 2d 717 (1972), aff'd without opinion, 32 N.Y. 2d 862 (1973).