Agnes, A.J.
INTRODUCTION
In this civil action the plaintiff Jeffrey B. Brooks (Brooks) seeks judicial review of a decision by the Civil Service Commission (Commission) which dismissed his complaint against the defendant Department of Correction (department)[1] in which he maintained that he was entitled to the procedural safeguards set forth in G.L.c. 31, §41 before he was placed on a ten-month period of unpaid leave. See G.L.c. 31, §44 and G.L.c. 30A, §14. The matter is before the court on a motion for judgment on the pleadings. See Superior Court Standing Order 1-96. The essential facts are set forth in the record of the proceedings below and are not in dispute.
BACKGROUND
Brooks is a full-time civil service correction officer. He was appointed in 1983. On January 23, 1998, while serving as a correction officer at the North Central Correctional Institution in Gardner, Massachusetts (NCCI), Brooks sent a letter to Superintendent Lynn Bissonette (superintendent) in which he warned of a “buildup of transient, demonic entities.” He stated that a former Captain of the correction officer staff at NCCI had performed an exorcism and that another such exorcism had to be performed to regain control and avoid a violent outbreak by inmates or staff.
On Januaiy 28, 1998, the superintendent contacted Brooks and confirmed that he had written the above letter. The superintendent advised Brooks that he was to undergo a psychiatric evaluation with the department’s psychiatrist to ensure that he was fit for duty. Brooks agreed to undergo such an evaluation. The superintendent memorialized this order in a letter to the deputy commissioner, and placed Brooks on administrative leave with pay effective January 26, 1998.
An evaluation of Brooks was conducted on February 2, 1998 by Dr. Polizoti, a licensed psychologist. The psychologist opined in a report to the superintendent dated February 5, 1998 that Brooks was not fit to return to duty due to a psychiatric disorder.
On February 5, 1998 the superintendent telephoned Brooks at home and informed him that based on Dr. Polizoti’s report he was on paid administrative leave for 12 weeks effective Januaiy 26, 1998. This decision was memorialized by the superintendent in a letter to Brooks dated February 11, 1998.[2]
Brooks was scheduled to be evaluated by Dr. Richard Tomb, a psychiatrist, on March 11, 1998. The evaluation did not occur because Dr. Tomb would not grant Brooks permission to tape record it. That same day, the superintendent notified Brooks in writing that due to his lack of cooperation in submitting to an evaluation by Dr. Tomb he was removed from paid administrative leave. Brooks responded in writing by acknowledging receipt of the superintendent’s letter and by stating that “(s]ince you did not indicate otherwise I assume this means I can return to work.” Brooks returned to work on March 18, 1998, but during roll call was escorted off the premises.
*569 In a letter from the then Department of Correction Commissioner Michael Maloney dated March 19, 1998, Brooks was informed that the commissioner had approved the superintendent’s request to place Brooks on medical leave from March 11, 1998 to and including April 30, 1998. Brooks was also informed that he was required to follow the terms of the collective bargaining agreement in using any sick, vacation and personal time credits.
On March 23, 1998, Brooks was notified in writing that Dr. Tomb wished to reschedule the evaluation. Brooks agreed in a letter dated April 1, 1998.[3]
Brooks wrote a letter to the payroll division on April 21, 1998 and asked about his payroll status. Brooks was informed a few days later that he was on unpaid medical leave through April 30, 1998 and that his last pay day was March 14, 1998. Brooks was notified in writing that the commissioner had extended his unpaid medical leave to May 31, 1998, and that he was required to follow the terms of the collective bargaining agreement in using any sick, vacation and personal time credits.
Brooks filed a complaint with the Civil Service Commission in which he stated that the department had placed him on unpaid medical leave without his permission and without a hearing in violation of law. Brooks maintained that he had been constructively suspended or discharged.
On May 7,1998, a fitness evaluation was conducted by Dr. Tomb. He opined that Brooks was not fit for duty. On May 27, 1998, the commissioner informed Brooks in writing that he had extended his medical leave of absence for 6 months through November 30, 1998, and that he was required to follow the terms of the collective bargaining agreement in using any sick, vacation and personal time credits. Brooks objected to this in a letter dated June 8, 1998 and stated that he considered himself as having been suspended since March 14, 1998.
Brooks applied for and ultimately obtained unemployment benefits based on a ruling by the Department of Employment and Training that he was able and actively seeking work and was on a leave “imposed by his employer.”
An additional psychiatric evaluation was conducted by Dr. Accardi on December 23, 1998. In a letter dated January 7, 1999, Brooks was informed by the department in writing that he was cleared to return to work effective January 17, 1999. Brooks returned to work on that date.
Brooks filed a complaint with the Civil Service Commission under G.L.c. 31, §42.[4] A hearing was conducted by an administrative magistrate on January 6, 2002. The magistrate made detailed findings of fact and rulings of law. The magistrate rejected Brooks’s arguments. He reasoned that the department acted lawfully under the statutes and the collective bargaining agreement in first placing Brooks on paid administrative leave and then on unpaid medical leave, and that the latter decision made on March 19, 1998 was not a disciplinary action. On November 9, 2000, the Civil Service Commission adopted the magistrate’s decision. This appeal followed. G.L.c. 30A, §14.
DISCUSSION
1. Standard of Review
The standard of review in a proceeding like this under G.L.c. 31, §44 is the familiar standard that governs in cases in which judicial review is sought of administrative agency decisions under G.L.c. 30, § 14(7). See Massachusetts Association of Minority Law Enforcement Officers v. Abban, 434 Mass. 256, 263 (2001). G.L.c. 30A, §14 (7), provides, in part as follows: “The court may affirm the decision of the agency, or remand the matter for further proceedings before the agency; or the court may set aside or modify the decision, or compel any action unlawfully withheld or unreasonably delayed, if it determines that the substantial rights of any party may have been prejudiced because the agency decision is . . . (c) Based upon an error of law; or... (g) Arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law.” This standard requires the court to give weight to the experience and authority of the Commission and to defer to its application of technical or specialized knowledge, but requires the court to overrule Commission decisions that are inconsistent with governing law. See Plymouth v. Civil Service Commission, 426 Mass. 1, 5 (1997).
2. Whether Brooks’s Complaint Filed with the Commission under G.L.c. 31, §42 Was Timely
Brooks maintains that when he was notified in writing on April 29, 1998 that he was being placed on unpaid medical leave, he had ten days in which to file a complaint with the Commission, and the complaint he filed on May 4, 1998 was timely. G.L.c. 31, §42 provides in part as follows:
Any person who alleges that an appointing authority has failed to follow the requirements of section forty-one in taking action which has affected his employment or compensation may file a complaint with the commission. Such complaint must be filed within ten days, exclusive of Saturdays, Sundays, and legal holidays, after said action has been taken, or after such person first knew or had reason to know of said action, and shall set forth specifically in what manner the appointing authority has failed to follow such requirements.
The defendant Commission, on the other hand, maintains that Brooks’s rights under G.L.c. 31, §42 commenced no later than February 5, 1998 when he was placed on paid administrative leave, and that the decision made by the department on March 19, 1998 to change Brooks’s status from paid administrative *570 leave to unpaid medical leave effective March 11,1998 was not a discharge, removal or suspension, had no legal significance, and thus was not an event that triggered the safeguards set forth in G.L.c. 31, §41. That statute provides in part as follows:
Except for just cause and except in accordance with the provisions of this paragraph, a tenured employee shall not be discharged, removed, suspended for a period of more than five days, laid off, transferred from his position without his written consent.. .
Before such action is taken, such employee shall be given a written notice by the appointing authority, which shall include the action contemplated, the specific reason or reasons for such action and a copy of sections forty-one through forty-five, and shall be given a full hearing concerning such reason or reasons before the appointing authority or a hearing officer designated by the appointing authority. The appointing authority shall provide such employee a written notice of the time and place of such hearing at least three days prior to the holding thereof... Within seven days after the filing of the report of the hearing officer, or within two days after the completion of the hearing if the appointing authority presided, the appointing authority shall give to such employee a written notice of his decision, which shall state fully and specifically the reasons therefor.
A civil service employee may be suspended for just cause for a period of five days or less without a hearing prior to such suspension. Such suspension may be imposed only by the appointing authority or by a subordinate to whom the appointing authority has delegated authority to impose such suspensions . . . Within twenty-four hours after imposing a suspension under this paragraph, the person authorized to impose the suspension shall provide the person suspended with a copy of sections forty-one through forty-five and with a written notice stating the specific reason or reasons for the suspension informing him that he may, within forty-eight hours after the receipt of such notice, file a written request for a hearing before the appointing authority on the question of whether there was just cause for the suspension. If such request is filed, he shall be given a hearing before the appointing authority or a hearing officer designated by the appointing authority within five days after receipt by the appointing authority of such request.
Saturdays, Sundays and legal holidays shall not be counted in the computation of any period of time specified in this section . . .
The reasoning followed by the defendant commission is that when the superintendent became aware of Brooks’ letter of January 23, 1998 or the unfit for duty report by Dr. Polizoti on February 2, 1998, she was empowered under the terms of the collective bargaining agreement (CBA) to place Brooks on unpaid medical leave. Article 8, Section 7(B) of the CBA authorizes the appointing authority to “grant to any employee... an unpaid leave of absence of up to twelve (12) weeks ... for a serious health condition” which renders the employee unfit to work. Defendant’s Brief in Opposition at 6. The defendant suggests that the superintendent elected to obtain a second opinion before taking the unpaid medical leave route and decided to place Brooks on paid administrative leave during the interim. Nonetheless, the commission asserts that Brooks’s rights under G.L.c. 31, §42 began to run no later than February 5, 1998 when the superintendent called him at home and informed him that he was being placed on paid administrative leave, and expired ten days thereafter.
G.L.c. 31, §41, as noted above, creates a panoply of procedural protections whenever a civil service employee is “discharged, removed or suspended for a period of more than five days ...” Before a suspension of more than five days duration may be imposed without his consent, the employee must receive written notice, a statement of reasons and a “full hearing.” G.L.c. 31, §41. Under G.L.c. 31, §1, a “suspension” is defined as “a temporary, involuntary separation of a person from his civil service employment by the appointing authority.” There is no specific time limit placed on the duration of a suspension. See Board of Selectmen v. Civil Service Commission, 366 Mass. 547, 548 (1974). There is no provision in G.L.c. 31 authorizing an appointing authority to place an employee on a “paid administrative leave.” Whatever its basis, because such a leave interrupts the employee’s regular work, it should be regarded as a “suspension” within the meaning of G.L.c. 31, §§1 and 41. See Police Commissioner of Boston v. Cecil 431 Mass. 410, 416 (2000) (“We conclude that the paid administrative leave imposed on Cecil pending the outcome of the investigation into specific matters that affected his fitness to serve tolled his probationary period, and that such tolling was consistent with the purpose of probationary employment and the public interest”).
On its face, the Commission’s reasoning appears to be sound. According to the Commission, Brooks is aggrieved by the loss of pay that resulted from being placed on medical leave effective March 11, 1998 and not by the separation from employment that began in January 1998 when he was placed on paid administrative leave. See Defendant’s Memorandum in Opposition at 12-13 (“[T]he discontinuance of Brooks’ pay, which took place in March 1998, cannot be characterized as permanent or temporary ‘separation’ of Brooks from his civil service position. Such ‘separation,’ if it occurred at all, took place when Brooks was removed from his position as a correction officer in January 1998”). However, this reasoning overlooks the *571 obvious. The dealings between Brooks and the department make it clear that he did not object to the decision to place him on paid administrative leave, which the parties understood was to be a temporary separation from duty pending the outcome of the psychiatric evaluation, because it was with pay. As soon as he learned that the suspension was without pay he voiced an objection and filed a timely complaint with the Commission under G.L.c. 31, §42.[5] The Commission’s position that Brooks waived his rights by not challenging the decision to place him on “paid administrative leave” finds no support in the statutes or cases interpreting G.L.c. 31, and is fundamentally unfair to public employees. Waiver is an intentional relinquishment of a known right. Niagara Fire Ins. Co. v. Lowell Trucking Corp., 316 Mass. 652, 657 (1944). See Merrimack Mutual Fire Ins. Co. v. Nonaka, 414 Mass. 187, 189 (1993). “There can be no waiver of a right unless the right is known and it was intended to surrender it.” Sheehan v. Commercial Travelers Mat. Acc. Assn. of America, 283 Mass. 543, 552 (1933), quoting from Boston Elev. Ry. v. Maryland Cas. Co., 232 Mass. 246, 252 (1919). How could it be said that by not challenging his suspension in the form of an administrative leave with pay Brooks was foregoing any right to challenge a separate decision made months later that resulted in a loss of pay?
It is entirely understandable that an employee such as Brooks who is placed on paid administrative leave in circumstances in which it is reasonable to assume it is a temporary separation and thus not required to use accrued sick leave, vacation leave or personal days might disagree with the underlying policy reason for the suspension, but not exercise the right to challenge the suspension under G.L.c. 31, §41. However, when such an employee is informed that his status has been changed from paid administrative leave to unpaid medical leave, it is likewise understandable that he would feel the appointing authority has taken an “action which has affected his employment or compensation.” G.L.c. 31, §42. Put differently, the department’s decision to place Brooks on unpaid medical leave for more than five days effective March 19, 1998 was the first event that affected Brooks’s “compensation,” was a suspension separate and apart from the earlier suspension, and thus triggered aright to file a complaint with the commission.
The defendant makes an alternative argument that even if Brooks had a right to challenge the decision to place him on unpaid medical leave effective March 11, 1998, he did not file a complaint with the Commission in a timely manner. Defendant’s Memorandum in Opposition at 13 n. 14. According to the record, Brooks filed his complaint on May 4, 1998. On March 11, 1998, the superintendent informed Brooks in writing that his administrative leave status would not continue, his status was unclear. In fact, the record indicates that the superintendent sought permission from the Commissioner to place Brooks on unpaid medical leave on March 12, 1998. Brooks returned to work on March 18, 1998. Although he was informed that he was on medical leave in the March 19, 1998 letter from the Commissioner, the findings of fact adopted by the Commission indicate he did not learn that his status was “unpaid” medical leave until sometime after April 24, 1998. Moreover, at that point, it was reasonable for Brooks to assume that this new status would in any case come to an end on April 30, 1998. It was only in the letter from the Commissioner dated April 29, 1998, that he learned that the leave was extended to May 31, 1998. Therefore, the argument that the Commission was without jurisdiction to entertain the complaint filed by Brooks on May 4,1998 is unavailing.
The Commission’s final argument is that Brooks did not suffer prejudice within the meaning of G.L.c. 31, §42 due to any “procedural violation” that may have occurred because the department could have placed him on unpaid medical leave instead of paid administrative leave. The defendant assumes, however, that the department not only had the right to place Brooks on unpaid medical leave back on January 28, 1998 (not an unreasonable assumption under the facts that were known at the time), but that it also had the right to impose such a suspension until January 17, 1999 when Brooks returned to work. In Mello v. Mayor of Fall River, 22 Mass.App.Ct. 974 (1986), relied upon by the defendant Commission, the employee who was discharged without a hearing in violation of G.L.c. 31, §42 for failing to comply with a municipal residency ordinance could not have been reinstated by the appointing authority even if a hearing had been conducted. Id, at 976. In the present case, by contrast, the appointing authority had a wide range of discretion to assess and determine when Brooks was fit for duty. Moreover, if a hearing had been conducted it is likely that the full picture of the plaintiffs mental health problems and his treatment would have been brought out. Thus, it is speculative to say that Brooks was not prejudiced by the loss of the right to a hearing under G.L.c. 31, §41. Even if the appointing authority elected to exercise its discretion to place him on unpaid medical leave following the hearing, Brooks would have been in a position to arrange for the necessary evaluation in order to qualify for reinstatement far sooner than occurred here. It is important to note that there is evidence in the record that Brooks was examined by a psychiatrist in February 1998 and found not to be unstable or in need of psychiatric treatment. There is no evidence that he was cleared for a return to duty as a result of any treatment that he received. Thus, on the record before me there is a basis for the view that the plaintiff suffered prejudice.
ORDER
For the above reasons, the defendant Commission made an error of law in ruling that the plaintiff waived *572 his right to a hearing under G.L.c. 31, §§41 and 42, and, in the alternative, that he did not suffer any prejudice. On the record before me, it is apparent that the appointing authority violated the plaintiffs rights under G.L.c. 31, §§41 and 42 by not affording him notice and a hearing before placing him on unpaid medical leave. The law provides that in such a case the Commission had a duty to order that the employee be restored to duty without a loss of compensation if he has suffered prejudice. G.L.c. 31, §42.
Under the circumstances, it is not possible to say whether the plaintiff would have been placed on unpaid medical leave if a hearing had been held. It is just as likely that he would have been placed on paid leave or cleared to return to his duties soon thereafter once it was discovered that he had been treating for mental health problems. For these reasons, the court concludes that the plaintiff suffered prejudice by being deprived on an exercise of the appointing authority’s discretion. A remand to the Commission for additional fact finding or review will not accomplish anything. The only fair result is to order the matter remanded to the Commission with directions to enter an order awarding the plaintiff his salary for the period in question (March 11, 1998 to January 17, 1999), the remedy envisioned by the Legislature in G.L.c. 31, §43.

The Commission correctly points out in its brief that the plaintiff should not have sued the Department of Correction because the administrative action of which the plaintiff complains was taken by the Commission. See Gilmore v. Registry of Motor Vehicles, 22 Mass.App.Ct. 902, 921 (1986).

Thereafter, Brooks sought and obtained mental health services from providers who had been treating him for depression. A psychiatric evaluation of Brooks did not find evidence of instability and did not recommend psychiatric treatment. Brooks did not communicate this information to the superintendent or the department.

Meanwhile, a grievance was filed by the union on behalf of Brooks and denied on March 31, 1998. Thereafter, a step II hearing was conducted and denied. In a letter dated May 19, 1998, the superintendent informed the union steward that Brooks’s grievance was denied because he had not been terminated and that he was not getting paid because his sick leave was exhausted.

G.L.c. 31, §42 provides in part that “[a]ny person who alleges that an appointing authority has failed to follow the requirements of section forty-one in taking action which has affected his employment or compensation may file a complaint with the commission. Such complaint must be filed within ten days, exclusive of Saturdays, Sundays, and legal holidays, after said action has been taken, or after such person first knew or had reason to know of said action, and shall set forth specifically in what manner the appointing authority has failed to follow such requirements ...”

The suggestion made in the Magistrate’s decision that the decision to place the plaintiff on unpaid medical leave was not a suspension because it was not a “disciplinary” action is without any force because there is nothing in the definition of “suspension” under G.L.c. 31, §1 that limits it to disciplinary actions.